ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHARLES N. BENDES, ESQ. (Bar No. 70126)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1999 Harrison Street, Suite 2675
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Proposed Attorneys for A.G. Ferrari Foods, Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-43327 EDJ |
| A.G. FERRARI FOODS, | Chapter 11 |
| Debtor. | **MOTION FOR APPROVAL OF CASH COLLATERAL STIPULATION** |

**Preliminary Hearing on Interim Use of Cash Collateral:**
  **Date:**
  **Time:**
  **Place:**

## I. INTRODUCTION

A.G. Ferrari Foods, the Debtor and Debtor-in- Possession herein ("Debtor") submits this motion ("Motion") for an order approving an agreement between the debtor and Bridge Bank ("Bridge") entitled Stipulation Regarding cash Collateral And Adequate Protection (Cash Collateral Stipulation") authorizing the Debtor to use Bridge's cash collateral in accordance with the terms and conditions set forth therein. The Debtor seeks use of the cash collateral on an interim basis pending entry of a final order at which time the Debtor shall seek authority to use cash collateral through the expiration date agreed to by the parties, or pursuant to Court order. The stipulation also provides that the Debtor grant a replacement lien and other forms of adequate

protection as set forth below in the Cash Collateral Stipulation, a copy of which is attached as Exhibit "A" to the Declaration of Patricia T. Saucy filed in support of this Motion.

The Debtor requires immediate access to cash in which Bridge asserts a security interest in order to maintain its operations and avoid irreparable harm to the estate. The proposed time frame for the use of the cash collateral is from the petition date through April 24, 2011. This cash collateral consists primarily of the use of the proceeds from the sale of food inventory in which Bridge has lien The consent to use of cash collateral is condition on the budget attached to the Cash Collateral.

As adequate protection for the Debtor's use of cash collateral, <u>solely</u> to the extent that there is any diminution in the value of the Bridge's pre-petition collateral, the Debtor proposes to grant a replacement lien in favor of the Bridge in the Debtor's assets, namely its post-petition assets, (subject to certain professional fee carve-outs for professionals and trustee fees and excluding avoidance actions and those other assets that are not capable of being encumbered or have already been pledged to third parties). In exchange for the use of cash collateral, the Debtor is not authorizing any releases, is not providing any waivers of claims under Bankruptcy Code §506(c), and is not granting automatic relief from the stay upon default. Accordingly, the Debtor's agreement with Bridge will comply with the Court's *Guidelines for Cash Collateral and Financing Stipulations* (the "Guidelines").

Since the Debtor requires immediate access to cash collateral to fund ongoing operations and preserve and maximize its going concern value, the Debtor requests that the Court grant the motion, first on an interim basis, and then by entry of a final order after notice to creditors.

## II.  FACTUAL BACKGROUND

The Debtor is A.G. Ferrari Foods is an Italian specialty food retailer that also sells its foods through its Wholesale and Internet channels. It began in 1919 with the CEO's grandfather, Annibale Giovanni Ferrari. It has developed over many years and sells fresh and dry Italian products. It direct imports from Italy a substantial amount of the dry goods that it sells in all channels. It currently operates 13 of its own stores in the San Francisco Bay Area. It also operates a Commissary in San Leandro, CA where it handles its fresh food production, and catering, as

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

well as housing its warehousing and administrative functions. The Debtor also transacts business through it website. The company currently employs approximately 145 employees.

The Debtor and Bridge are parties to certain prepetition loan documents consisting of a promissory note dated May 19, 2009 in the original principal amount of $357,326.06, Commercial Security Agreement dated May 19, 2009, Change of Terms Agreement dated December 1, 2009 and Modification to Business Loan Agreement dated August 10, 2010 (the "Prepetition Loan Documents"). In addition, Bridge has perfected its security interest in the Debtor's assets by filing a UCC-1 Financing Statement with the California Secretary of State. The current balance owing under the Prepetition Loan Documents is $136,218.42. Pursuant to the Stipulation, Bridge will consent the use of $706,333 of its cash collateral pursuant to the budget attached to the Stipulation as Exhibit "C."

### III. ARGUMENT

#### A. The Cash Collateral Stipulation Should be Approved Pursuant to Section 363 of the Bankruptcy Code

The parties have agreed to the Cash Collateral Stipulation, a copy of which is attached as **Exhibit A** to this Motion and the terms and conditions are incorporated as if fully set forth herein.

The Debtor's use of property of its estate is governed by Section 363 of the Bankruptcy Code. Section 363(c)(1) provides in pertinent part that:

> If the business of the Debtor's authorized to be operated under section .
> . . 1108 . . . of this Title and unless the Court orders otherwise, the
> Trustee may enter into transactions, including the sale or lease of
> property of the estate, in the ordinary course of business, without notice
> or a hearing, and may use property of the estate in the ordinary course
> of business without notice or hearing. 11 U.S.C. § 363(c)(1).

A debtor-in-possession has all the rights and powers of a Trustee with respect to property of the estate, the including the right to use property of the estate in compliance with Section 363.

See 11 U.S.C. § 1107(a).

Section 363(c)(2) establishes a special requirement with respect to "cash collateral," by providing that the Trustee or debtor-in-possession may not use, sell or lease "cash collateral" under subsection (c)(1) unless:

    (A)    Each entity that has an interest in such collateral consents; or

    (B)    The Court, after notice and hearing, authorizes such use, sale or lease in accordance with the provisions of this section.

"Cash collateral" is defined as, "cash, negotiable instruments, documents of title, securities, deposit accounts or cash equivalents in the estate and an entity other than the estate have an interest." 11 U.S.C. § 363(a).

It is universally acknowledged that the Debtor's cash "is the life's blood of the business," and the Bankruptcy Court must assure that such "life's blood is available for use, even if to a limited extent." In re Mickler 9 BR 121, 123 (Bankr. M.D. Fla. 1981).

    **B.**    **The Adequate Protection Lien Provided in the Cash Collateral Stipulation Is Appropriate and Necessary to Adequately Protect Secured Creditor's Collateral**

Bridge is entitled to protection from the Debtor's use of cash collateral to the extent provided in the proposed order. Although adequate protection is not defined in the Bankruptcy Code, Section 361 provides the following three non-exclusive examples of what may constitute adequate protection:

    (1)    Requiring the Trustee to make a cash payment or periodic cash payments to such entity, to the extent that the . . . use . . . under section 363 of this Title . . . results in a decrease in the value of such entity's interest in such property.

    (2)    Providing to such entity an additional or replacement lien to the extent that such . . . use . . . results in a decrease in the value of such entity's interest in such property; or

    (3)    Granting such relief . . . as will result in the realization by such entity of the

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1999 Harrison Street, Suite 2675
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

indubitable equivalent of such entity's interest in such property.

Neither § 361 nor any other provision of the Bankruptcy Code defines the nature and extent of the "interest in property" to which a secured creditor is entitled to adequate protection under Section 363. The statute plainly provides, however, that a qualifying interest demands protection only to the extent that the use of the creditor's collateral will result in a decrease in "the value of such entity's interest in such property." 11 U.S.C.§§ 361 and 363(e). <u>United Savings Ass'n of Texas v. Timbers of Inwood Forrest Assocs., Ltd.</u> 484 US 365, 108 S.Ct. 626, 98 L. Ed. 2d 740 (1988).

Bridge in this case is entitled to adequate protection from the Debtor's use of its cash collateral to the extent that such use results in a diminution in the value of Bridge existing collateral. The regular payment and the granting of the replacement lien proposed in the stipulation adequately protects the secured creditor by providing it with a security interest in post-petition assets generally the same type and character as its pre-petition lien. This lien is appropriate and necessary to adequately protect its existing security interest and will allow the Debtor to use the cash collateral of Bridge. The outstanding balance owing to Bridge under the pre-petition loan is $136,218.42. The Debtor is current on the payments under the pre-petition loan documents and intends to continue to make the monthly payments to Bridge. In addition, the value of the Debtor's inventory is estimated at $1.3 million (at cost) and it has equipment having a value of approximately $1.2 million.

The Bankruptcy Court, where possible, should resolve issues presented in favor of reorganization rather than to force a liquidation because the business cannot use cash or other property to operate for a short time. <u>In re Hoffman</u>, 51 BR 42, 47 (Bankr. W.D. Ark. 1985) (relief from stay); <u>In re A&B Heating and Air Conditioning, Inc.</u>, 48 BR 401, 403-04 (Bankr. M.D. Fla. 1985) (injunction); <u>In re Heatron, Inc.</u> 6 BR 493, 496 (Bankr. W.D. Mo. 1980) (cash collateral

motion). Here, the Debtor's continued use of cash collateral to conduct the operation of its business will preserve, and indeed, maximize the value of a secured creditor's collateral and enhance the potential recovery for all creditors of this estate. The continued use of cash collateral will take the Debtor up to the time it must file its plan and disclosure statement.

### C. The Cash Collateral Stipulation Complies with the Court's Guidelines

The stipulation not only complies with Bankruptcy Code Sections 361 and 363, as mentioned above, it is also consistent with the Court's cash collateral guidelines.

### IV. CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court enter an order:

(a) Granting the Motion and approving Cash Collateral Stipulation between Bridge and the Debtor to allow the Debtor to use Bridge's cash collateral on an interim basis pending a final hearing on this matter;

(b) Establish a final hearing date and set deadlines by which the Debtor must serve appropriate parties under FRBP 4001 and last date to file objections to the Motion; and

(c) Any further relief this Court deems appropriate.

Dated: March 28, 2011          Kornfield, Nyberg, Bendes & Kuhner, P.C.

By: /s/ Eric A. Nyberg
    (Bar No. 131105)
    Proposed Attorneys for A.G. Ferrari Foods, Debtor