ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.G. Ferrari Foods, Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>A.G. FERRARI FOODS,<br><br>                            Debtor. | Case No. 11-43327 EDJ<br><br>Chapter 11<br><br>**MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING, GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND PROVIDING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361 & 364(c)**<br><br>Date: August ___, 2011<br>Time: TBD<br>Ctrm: TBD<br>       U.S. Bankruptcy Court<br>       1300 Clay Street<br>       Oakland, California |

### I.    Introduction and Summary of Relief Requested

A.G. Ferrari Foods, the debtor and debtor-in-possession ("Debtor") in the above-captioned voluntary bankruptcy case (the "Bankruptcy Case") under Chapter 11 of the Bankruptcy Code which was filed on March 28, 2011 (the "Petition Date"), hereby submits this Motion for Order Authorizing Post-Petition Financing, Granting Security Interests and Superpriority Claims, and Providing Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 & 364(c) (the "Motion"). By

this Motion, the Debtor moves the Court for entry of an order authorizing post-petition financing, granting security interests and superpriority claims, and providing adequate protection pursuant to §§ 105, 361 and 364(c) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 9014-1 of the Bankruptcy Local Rules, consistent with the terms and conditions set forth in the Agreement for Post-Petition Financing Pending Sale of Assets attached hereto as <u>Exhibit A</u> and by this reference incorporated herein (the "DIP Loan Agreement"), which provides for debtor-in-possession financing to be extended by Renovo Capital, LLC ("Renovo").

The Debtor and Renovo are parties to an Executed Term Sheet pursuant to which the Debtor contemplates selling its assets to Renovo in exchange for cash and assumption of certain liabilities by Renovo.

By this Motion, the Debtor specifically seeks entry of an order granting the Debtor authorization to borrow up to $353,000 from Renovo on a secured and superpriority basis and on the terms set forth for in the DIP Loan Agreement (the "DIP Loan").

This Motion is based on the memorandum of points and authorities set forth herein, the supporting Declaration of Patricia T. Saucy, the Introductory Statement and Certification of Compliance with Guidelines for Cash Collateral and Financing Motions and Stipulation (the "Certification of Compliance"), the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing of the Motion.

In support of the Motion, the Debtor represents as follows:

## II. Notice and Procedure

1. On March 28, 2011 (the "Petition Date"), the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code and is presently operating its business as debtor-in-possession pursuant to the provisions of 11 U.S.C. §§ 1107 and 1108. A committee of unsecured creditors has been appointed in this case. Copies of this Motion, the Declaration of Patricia T. Saucy, the Notice of Hearing and the Certification of Compliance, in accordance with Rule 4001(c) of the Federal Rules of Bankruptcy procedure and the applicable local rules of the Court, are being served by mail on the United States Trustee, Bridge Bank, the Creditors Committee and any party having requested special notice.

### III. Factual Summary

2. The Debtor is an Italian specialty food retailer that also sells its foods through its Wholesale and Internet channels. It began in 1919 with the CEO's grandfather, Annibale Giovanni Ferrari. It has developed over many years and sells fresh and dry Italian products. It direct imports from Italy a substantial amount of the dry goods that it sells in all channels. The Debtor currently has ten (10) real property leases and nine (9) retail locations. It also operates a Commissary in San Leandro, California where it handles its fresh food production, and catering, as well as housing its warehousing and administrative functions. The Debtor also transacts business through it website. The company currently employs approximately 110 employees.

3. The Debtor's primary secured creditor is Bridge Bank ("Bridge"). Bridge, as of August 9, 2011, is owed $100,107.94. Bridge has a blanket lien on all of the assets of the Debtor.

4. It is the Debtor's goal to use the DIP Loan to enable it to continue its business operations and meet its post-petition obligations as they come due pending a contemplated sale of its assets to Renovo.

### IV. Necessity for DIP Financing

5. The Debtor has an immediate need to obtain the post-petition financing to allow the Debtor to meet short term operational shortfalls pending the contemplated sale of its assets to Renovo. Attached to the Saucy Declaration as <u>Exhibit B</u> and incorporated herein by reference is a true and correct copy of the Debtor's Cash Flow Forecast for its business operating through October 19, 2011. As set forth therein, the Debtor will need to borrow funds beginning immediately upon entry of an order from this Court approving the Motion in order for the Debtor to remain current on its post-petition obligations. The DIP Loan Agreement provides what the Debtor believes are the necessary funds to satisfy the Debtor's expenses pending the sale of assets to Renovo. The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor and the sale of its assets to Renovo.

///

## V. DIP Financing

### A. Amount and Interest Rate.

6. Subject to the terms and conditions of the DIP Loan Agreement, Renovo has agreed to advance an aggregate amount not to exceed $353,000 for the payment of disbursements for Permitted Expenses (as defined in the DIP Loan Agreement). All advances under the DIP Loan shall bear interest at the rate of 12% per annum from the date of each advance to the date of payment.

### B. Superpriority Claim.

7. As security for the Debtor's obligations and indebtedness arising under or in respect of the DIP Loan (the "DIP Obligations"), Renovo shall be granted, pursuant to §§ 364(c)(1) and 507(b) of the Bankruptcy Code, a claim (the "Superpriority Claim") with priority over any and all administrative expenses or other claims of the kind specified in, or ordered pursuant to, Sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code, the "equity" exception in Section 552(b), 726 or any other provision of the Bankruptcy Code (whether incurred in this Bankruptcy Case or in any successor case), subject only, in the event of the occurrence of an Event of Default (as such term is defined in paragraph 12 herein), to the payment of the Carve-Out (as defined in paragraph 11 herein).

### C. DIP Liens.

8. The DIP Obligations shall also be secured by the grant of the following security interests and liens for the benefit of Renovo (such security interests and liens being collectively referred to as the "DIP Liens," and all property identified in clauses (a) and (b) below being collectively referred to as the ("DIP Collateral"), subject only to the payment of the Carve-Out:

(a) Pursuant to Section 364(c)(2) of the Bankruptcy Code, a perfected first priority senior security interest in and lien upon all pre and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, that, as of the Petition Date is not subject to valid, perfected and non-avoidable liens; provided, however, that Renovo shall not receive a security interest in or lien upon any causes of action arising under Sections 542, 544, 545, 547, 548, 549, 500, 551, 553(b), or 724(a) of the Bankruptcy Code or any proceeds thereof

(the "Avoidance Actions"); and

    (b)  Pursuant to Section 364(c)(3) of the Bankruptcy Code, a perfected security interest in and lien upon all of the pre and post-petition tangible and intangible property of the Debtor, whether now existing or hereafter acquired, which lien shall be <u>junior</u> to valid, perfected and unavoidable liens in existence as of the Petition Date and any post-petition liens granted to Bridge Bank pursuant to any cash collateral agreement between the Debtor and Bridge Bank or to valid and unavoidable liens in existence immediately prior to the Petition Date that were perfected subsequent to the Petition Date as permitted by Section 546(b) of the Bankruptcy Code.

  9.  The DIP Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtor and its estate under Section 551 of the Bankruptcy Code, or (ii) any liens arising after the Petition Date.

  **D.**  **Perfection of Liens.**

  10.  Renovo may, but shall not be required to file or record any financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to it pursuant to the order approving the DIP loan (the "Approval Order"). The Approval Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens.

  **E.**  **Carve-Out.**

  11.  The DIP Liens and the Superpriority Claim shall be subordinated to the payment of the following (the "Carve-Out"): (i) the U.S. Trustee's Fees; (ii) fees payable to the Clerk of the Bankruptcy Court; and (iii) the reasonable fees and expenses incurred on or after the Petition Date and approved by final order of the Bankruptcy Court of those certain professionals retained under Bankruptcy Code §§ 327 or 1103 by the Debtor or the Official Committee of Unsecured Creditors up to the sum of $80,000 net of any retainers. Nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses or other disbursements described herein.

  **F.**  **Events of Default.**

  12.  Unless Renovo shall have provided its prior written consent, or all DIP Obligations shall have been indefeasibly paid in full in cash, and the commitments under the DIP Loan shall

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

have been terminated in whole, each of the following shall constitute an "Event of Default:"

    (a)    The occurrence of September 8, 2011;

    (b)    The occurrence of August ___, 2011, without entry of the Approval Order and any final or subsequent order contemplated by the Approval Order;

    (c)    Failure by the Debtor to pay principal, interest or fees when due, with that circumstance continuing for more than two business days;

    (d)    The Debtor's breach of any other covenant or obligation in this Agreement, where that breach continues for more than ten days;

    (e)    The Bankruptcy Case is dismissed or converted to a Chapter 7 case;

    (f)    A Chapter 11 Trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case and the order appointing such trustee, responsible officer, or examiner is not stayed, reversed or vacated within 10 days after its entry;

    (g)    Any expense of administration or claim (other than the Carve Out) that is of equal or senior priority to the claims of Lender is granted in the Bankruptcy Case;

    (h)    Any post-petition security interest or lien on the Collateral, other than the security interest and lien granted to Lender, is authorized in the Bankruptcy Case;

    (i)    The Court enters an order granting relief from the automatic stay to the holder of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Debtor that comprise the Collateral;

    (j)    Debtor fails to maintain in full force and effect an insurance policy(ies) insuring the Collateral for its full replacement value and that names Lender as loss payee and additional insured;

    (k)    Any material provision of the Agreement shall cease to be valid and binding on Debtor, or Debtor so asserts in any pleading filed in any court;

    (l)    An order is entered reversing, amending, supplementing, staying for a period in excess of two days, vacating or otherwise modifying the Approval Order or any other

Motion for Order Authorizing Post-Petition Financing -6-
Case: 11-43327   Doc# 146   Filed: 08/10/11   Entered: 08/10/11 17:01:05   Page 6 of 18

order implementing or effectuating the provisions of this Agreement or the transactions contemplated by it;

        (m)    Any judgment as to any post-petition obligation is rendered against Debtor and the enforcement thereof is not stayed, or there is rendered against Debtor a nonmonetary judgment with respect to a post-petition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the ability of the Debtor to perform its obligations under the Agreement; and

        (n)    Debtor files, or the Court confirms, a reorganization plan that does not incorporate the Sale and Lender's rights pertinent thereto.

        13.    In the event of a default under the DIP Loan Agreement, the Debtor's authorization to use borrowings under the DIP Loan will be terminated and the Debtor shall have no right to use borrowings under the DIP Loan other than toward (a) the satisfaction of the DIP Obligations, (b) the Carve-Out, (c) satisfaction of claims of the Debtor's employees for unpaid wages and commissions accrued in the ordinary course of the Debtor's business prior to the default. Such termination is without prejudice to the right of the Debtor to seek an order contesting the Event of Default.

        14.    All DIP Obligations shall be due and payable upon an event of default as defined above, or upon the closing of a sale of assets of the Debtor to Renovo in which case the outstanding DIP Obligation becomes an assumed obligation of the purchaser.

        15.    Unless and until the DIP Obligations are unconditionally and indefeasibly repaid in full in cash, the protection afforded to Renovo under the DIP Loan Agreement and Approval Order shall survive the entry of any order confirming a plan of reorganization or converting the Bankruptcy Case into a case under Chapter 7 of the Bankruptcy Code, and the DIP Liens and the Superpriority Claim shall continue and shall maintain their priority as provided by the DIP Loan Agreement until the DIP Obligations are unconditionally and indefeasibly repaid in full in cash.

    **G.**    **Preservation of Rights Under DIP Loan Agreement**

        16.    No claim having a priority superior to or *pari passu* with that granted by the DIP Loan Agreement to Renovo shall be granted while any portion of the DIP Loan (or any

refinancing thereof) or the commitment thereunder, remains outstanding. The security interest and liens granted to Renovo thereunder shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor's estate under Section 551 of the Bankruptcy Code or (ii) subordinated to or made *pari passu* with any other lien or security interest under Section 364(d) of the Bankruptcy Code or otherwise.

17. If an order dismissing the Bankruptcy Case is at any time entered, such order shall provide (in accordance with Sections 105 and 349 of the Bankruptcy Code) that (i) the superpriority claims, liens and security interests granted to Renovo pursuant to the DIP Loan Agreement shall continue in full force and effect and shall maintain their priorities as provided herein until all obligations in respect thereof shall have been paid and satisfied in full (and that such superpriority claims and liens, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) the Bankruptcy Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

## VI. Legal Discussion

11 U.S.C. § 364(c) allows the Court to authorize a post-petition borrowing by a debtor. 11 U.S.C. § 364(c) provides:

> (c) If the trustee is unable to obtain unsecured credit allowable under Section 503(b)(1) of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt —
>
> (1) With priority over any or all administrative expenses of the kind specified in Section 503(b) or 507(b) of this title;
>
> (2) Secured by a lien on property of the estate that is not otherwise subject to a lien; or
>
> (3) Secured by a junior lien on property of the estate that is subject to a lien.

In the present case, as set forth above, the post-petition financing is required for the Debtor to be able to meet its post-petition obligations as they come due pending a sale of its assets to Renovo. The Debtor cannot obtain post-petition financing on an unsecured basis so it is

appropriate for the post-petition financing to be secured by a junior lien on property of the estate.

WHEREFORE, the Debtor respectfully requests that the Court enter an Order:

1. Granting the Motion and authorizing the Debtor to borrow up to $353,000 from Renovo Capital, LLC under the DIP Loan Agreement to fund the operations of the Debtor on the terms set forth in the DIP Loan Agreement and the Order granting this Motion;

2. Authorizing the Debtor to enter into the DIP Loan Agreement; and

3. Granting such other relief as the Court deems just and proper.

Dated: August 10, 2011

Kornfield, Nyberg, Bendes & Kuhner, P.C.

By: /s/ Eric A. Nyberg
(Bar No. 131105)
Attorneys for A.G. Ferrari Foods, Debtor

# EXHIBIT A

# AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS

THIS AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS "Agreement") is made and dated this 10th day of August, 2011, by and between A.G. Ferrari Foods ("<u>Debtor</u>"), and Renovo Capital LLC ("Renovo" or "<u>Lender</u>").

## RECITALS

A.  On March 28, 2011 (the "<u>Petition Date</u>"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of California (the "Bankruptcy Court"), Case No. 11-43327 EDJ (the " Bankruptcy Case").

B.  Debtor and Renovo want to effectuate a sale of certain assets and the assignment of certain leases by Debtor to Renovo. Debtor is in need of capital with which to operate its business pending the sale and Renovo has agreed to lend certain funds to Debtor for that purpose, including the payment of lessors, subject to approval by the Bankruptcy Court, as is provided for herein.

C.  Debtor believes and represents that unless it is able to borrow funds from Renovo on the terms and conditions provided for herein, it believes it will be able to operate its business in the ordinary course only for a severely limited period beyond the date of this Agreement and would then likely shut down and liquidate. Debtor therefore also believes and represents that the borrowing of funds provided for herein is reasonable and necessary and is in the best interests of the bankruptcy estate and the Debtor's creditors and other stakeholders, in view of the current circumstances in which the Debtor finds itself.

**WHEREFORE**, based upon the foregoing facts, the parties hereto hereby agree that the Bankruptcy Court should enter an order ("Approval Order") approving the following terms:

1.  **Postpetition Borrowings.** Debtor may borrow up to $353,000 from Lender under the terms and conditions set forth in this Agreement ("Loan"). The Loan, together with interest thereon at the annual rate of 12%, is, for purposes of this Agreement, a component of "Postpetition Indebtedness." "Postpetition Indebtedness" also includes all expenses, including reasonable attorneys' fees and costs incurred by Lender in connection with this Agreement, the Loan or the Sale described below, to collect the Postpetition Indebtedness, to prepare and obtain approval of this Agreement, to enforce Lender's rights under the Loan or this Agreement, to conduct due diligence in connection with the Sale or otherwise relating to the Postpetition Indebtedness. As a condition to any obligation of Lender to make advances pursuant to this Agreement, the Bankruptcy Court shall have entered the Approval Order which authorizes and approves this Agreement and the transactions contemplated by it.

2.  **Mandatory and Discretionary Advances.** Unless and until a "Termination Event" described in Paragraph 10 below occurs, and subject to the Debtor satisfying the sale and

1

#28576 v1 lax

performance projections provided for in Exhibit A ("Daily Cash Projections") Lender shall advance to Debtor the funds required to pay the expenditures set forth in the Daily Cash Projections (the "Budget") upon written request of Debtor, up to a total of $250,000 (collectively, the "Mandatory Advances"). Other than the Mandatory Advances, Lender shall have the right, in its sole and absolute discretion, to make or decline to make advances requested by Debtor ("Discretionary Advances"). In no event will the Discretionary Advances exceed the principal sum of $103,000 in the aggregate.

3. **Collateral.** As security for the Postpetition Indebtedness, Debtor hereby grants to Lender security interests and liens upon all tangible and intangible property of the Debtor and its estate, of any kind or nature whatsoever, including but not limited to all of the following property of the Debtor and its estate now owned or hereafter acquired, which property is referred to as the "Collateral" (Collateral owned at the Petition Date is referred to here as "Prepetition Collateral"; Collateral acquired by the debtor on or after the Petition Date is referred to here as "Postpetition Collateral"):

    a. all "Accounts" as defined in the California Commercial Code (the "UCC");

    b. All "Certificates of Title" as defined in the UCC;

    c. all "Chattel Paper" as defined in the UCC;

    d. all "Commercial Tort Claims" as defined in the UCC;

    e. all "Commodity Accounts" and "Commodity Contracts" as defined in the UCC;

    f. all "Deposit Accounts" as defined in the UCC;

    g. all "Documents" as defined in the UCC;

    h. all "Electronic Chattel Paper" as defined in the UCC;

    i. all "Equipment," as defined in the UCC;

    j. all "Fixtures" as defined in the UCC;

    k. all "Goods" as defined in the UCC;

    l. all "General Intangibles" as defined in the UCC;

    m. all "Instruments" as defined in the UCC;

2

#28576 v1 lax

n.  all "Inventory" as defined in the UCC;

o.  all "Investment Property" as defined in the UCC;

p.  all "Letter-of-Credit rights" as defined in the UCC;

q.  all "Money" as defined in the UCC;

r.  all "Promissory Notes" as defined in the UCC;

s.  all "Supporting obligations" as defined in the UCC;

t.  all "Tangible chattel paper" as defined in the UCC;

u.  all "Proceeds" of the foregoing as defined in the UCC;

v.  all books and records relating to any of the foregoing;

w.  all other property and interests in property now owned or hereafter acquired by the Debtor's estate, including all causes of action existing as of the Petition Date and their proceeds, but excluding causes of action arising under the Bankruptcy Code or coming into existence as a result of the petition or after the Petition Date;

x.  to the extent not included in the Collateral by reason of the foregoing categories of Collateral, the Collateral includes an obligation owed to the Debtor by Paul Ferrari in the amount of **$42,000** that arises from or in connection with the Restated Executive Employment Agreement dated August 16, 2001 between Paul Ferrari and the Debtor, as subsequently amended ("Paul Ferrari Payable"); the Debtor's websites, sources codes pertinent to those websites and customer lists; and all trademarks, trade names, copyrights, logos and other intellectual or intangible property.

With respect to Prepetition Collateral that is subject to a valid and perfected lien on the Petition Date ("Valid Prepetition Liens"), Lender's security interests and liens shall be junior to the Valid Prepetition Liens and with respect to Postpetition Collateral that has been provided to Bridge Bank pursuant to the various cash collateral agreements Lender shall have a junior security interest; Lender shall have a first priority senior lien on all other Prepetition Collateral and other Postpetition Collateral.

4. **Powers As Secured Creditor.** Lender shall have all of the rights and powers of a "Secured Party" under the UCC with respect to the Collateral.

5. **Repayment Of Postpetition Indebtedness.** Subject to the provisions of paragraph 14 below relative to treatment of the Postpetition Indebtedness under the "Credit Conversion", the Postpetition Indebtedness shall be due and payable upon the occurrence of a

3

#28576 v1 lax

Termination Event; *provided, however,* that prior to the occurrence of a Termination Event, if at any time Debtor possesses money or cash equivalents that exceed the remaining amount of expenses set forth in the Budget (a "Surplus"), at Lender's discretion, to be exercised reasonably, the Surplus shall be turned over to Lender and applied by Lender to the Postpetition Indebtedness in the following order: (i) first to the outstanding fees, costs and expenses of Lender incurred with respect to the Postpetition Indebtedness, (ii) then to outstanding accrued interest on the Postpetition Indebtedness, and (iii) then to reduce the principal amount of the Postpetition Indebtedness. Furthermore, if the Sale occurs prior to the occurrence of a Termination Date, the Postpetition Indebtedness will be credited against the purchase price of the Sale.

6. **Priority Of Postpetition Indebtedness**. All Postpetition Indebtedness shall be an expense of administration pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code and, except as provided in Paragraph 3, shall have priority, under sections 364(c)(1) and 507(b) of the Bankruptcy Code, over all other administrative expenses incurred in the Bankruptcy Case, including administrative expenses of the kind specified in or authorized pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code, subject only to the "Carve Out". For avoidance of doubt: no party shall be entitled, at any time in this chapter 11 Bankruptcy Case or any subsequent chapter 7 phase of the Bankruptcy Case, to any order which authorizes the Debtor or any trustee to obtain credit or to incur debt, under section 364 of the Bankruptcy Code or otherwise, that has repayment priority equal or senior to, or is secured by a lien or security interest which is equal or senior to a lien or security interest held by Lender, without Lender's prior written consent.

7. **Carve Out For Certain Expenses**. Notwithstanding anything to the contrary herein, including the occurrence of a Termination Event, there shall be a "Carve Out" from the amounts payable to Lender from the Collateral, and the claims and liens of Lender on the Collateral shall be subordinated to (a) the quarterly fees of the Office of the United States Trustee incurred prior to the occurrence of a Termination Event, and (b) fees payable to the Clerk of the Bankruptcy Court; and (c) the allowed fees and expenses of the Debtor's professionals and professionals employed by the Official Committee of Unsecured Creditors, not to exceed $80,000 in the aggregate, net of any retainers, incurred prior to the occurrence of a Termination Event (collectively, the "Carved Out Expenses"); *provided, however,* that the Carve Out and subordination provided for in this Paragraph 7 shall not apply to any fees, costs or expenses incurred in this Bankruptcy Case (other than the United States Trustee's quarterly fees) in (i) the advancement of any adversary proceeding or contested matter against Lender or any other adversary proceeding or contested matter that Lender opposes, (ii) the opposition to any application, motion or complaint filed or supported by Lender, or (iii) the advancement of any plan of reorganization not supported by Lender.

8. **Perfection Of Postpetition Liens**. The liens and security interests in the Collateral securing the Postpetition Indebtedness granted by Debtor in this Agreement shall be automatically perfected upon entry of the Approval Order and Lender is not be required to file or

4

#28576 v1 lax

record any documents or to take any further steps in order to perfect such liens and security interests. Nevertheless, if Lender, in its discretion, elects for any reason to file or record any financing statements, notices or other documents with respect to the Collateral or the Postpetition Indebtedness, the Debtor shall promptly execute such documents as Lender may request. Lender is authorized to effectuate such filings and recordings, and such filings and recordings shall be deemed to have been made effective as of the date of this Agreement. Debtor shall perform all acts, and execute and comply with the terms of such other documents, instruments and agreements as Lender may require or which Lender otherwise deems necessary, in its sole discretion, to effectuate the purpose, terms or conditions of this Agreement and the transactions contemplated by it.

9. **Additional Adequate Protection**. As additional adequate protection for Lender, the Debtor shall: (a) upon Lender's request, promptly provide Lender with weekly cash flow reports, monthly, quarterly and annual financial statements for Debtor, monthly financial projections delivered quarterly, and other reports as may be reasonably requested by Lender, such annual financial statements to be audited for Debtor, in a manner satisfactory to Lender; (b) upon reasonable notice from Lender, provide Lender access reasonably necessary for the inspection of the Collateral and to review all records of the Debtor; and (c) upon the request of Lender, provide to Lender any other information reasonably requested by it.

10. **Termination Events**. Upon the occurrence of any of the following events ("Termination Events"), and at the election of Lender (a) Lender shall no longer be required to make any Mandatory Advances and all advances thereafter shall be Discretionary Advances, (b) all Postpetition Indebtedness shall be due and owing, and (c) if the Debtor does not repay the outstanding Postpetition Indebtedness within seven days of a Termination Event, Lender may seek, on shortened time, relief from the automatic stay to exercise all rights and remedies as a secured creditor. Termination Events include:

        a.       The occurrence of September 8, 2011 unless said date is extended by agreement with the landlords for San Leandro, Berkeley and Castro Street locations;

        b.       The occurrence of August 19, 2011, without entry of the Approval Order and any final or subsequent order contemplated by the Approval Order;

        c.       The occurrence of August 19, 2011, without the filing of a Sale Motion to effectuate as described in Paragraph 14;

        d.       Failure by the Debtor to pay principal, interest or fees when due, with that circumstance continuing for more than two business days;

        e.       The Debtor's breach of any other covenant or obligation in this Agreement, where that breach continues for more than ten days;

5

#28576 v1 lax

Case: 11-43327   Doc# 146   Filed: 08/10/11   Entered: 08/10/11 17:01:05   Page 15 of 18

f. The Bankruptcy Case is dismissed or converted to a chapter 7 case;

g. A chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case and the order appointing such trustee, responsible officer, or examiner is not stayed, reversed or vacated within 10 days after its entry;

h. Any expense of administration or claim (other than the Carve Out) that is of equal or senior priority to the claims of Lender is granted in the Bankruptcy Case;

i. Any postpetition security interest or lien on the Collateral, other than the security interest and lien granted to Lender, is authorized in the Bankruptcy Case;

j. The Court enters an order granting relief from the automatic stay to the holder of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Debtor that comprise the Collateral;

k. Debtor fails to maintain in full force and effect an insurance policy(ies) insuring the Collateral for its full replacement value and that names Lender as loss payee and additional insured;

l. Any material provision of the Agreement shall cease to be valid and binding on Debtor, or Debtor so asserts in any pleading filed in any court;

m. An order is entered reversing, amending, supplementing, staying for a period in excess of two days, vacating or otherwise modifying the Approval Order or any other order implementing or effectuating the provisions of this Agreement or the transactions contemplated by it;

n. Any judgment as to any postpetition obligation is rendered against Debtor and the enforcement thereof is not stayed, or there is rendered against Debtor a nonmonetary judgment with respect to a postpetition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the ability of the Debtor to perform its obligations under the Agreement;

o. Debtor files, or the Court confirms, a reorganization plan that does not incorporate the Sale and Lender's rights pertinent thereto.

11. **No Surcharge.** In light of and as additional consideration for the Carve Out, the Debtor hereby waives any right it may have, on behalf of itself, its professionals, its estate, any administrative claimant or creditor and any trustee that may be appointed in this chapter 11 case or any chapter 7 phase of the Bankruptcy Case into which it might be converted, to seek to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, for any

6

costs and expenses of the estate or to otherwise seek reimbursement from Lender for any such costs and expenses. If, notwithstanding the preceding provisions of this Paragraph 11, the Bankruptcy Court issues an order surcharging the Collateral under section 506(c) of the Bankruptcy Code, then the Carve Out shall be credited against and considered payment upon such surcharge.

12. **Relief From Stay.** Debtor agrees that if Lender reasonably requires relief from the automatic stay of section 362(a) of the Bankruptcy Code to permit Lender to take actions necessary or appropriate to carry out the provisions or the purposes of this Agreement, including any action to recover the Postpetition Indebtedness or to enforce the security interests and liens securing repayment of the Postpetition Indebtedness in the event that the Debtor shall fail to pay the Postpetition Indebtedness when due, then Lender may seek such relief on "shortened time" in conformity with the Bankruptcy Court's Local Rules and other applicable rules of practice, and Debtor will not oppose Lender's requests of the court to shorten time. No waiver of the Debtor's right to oppose the request for relief from the automatic stay is implied or agreed to.

13. **Good Faith Advances.** Any advances made by Lender to the Debtor, including advances made prior to Bankruptcy Court approval of this Agreement, shall be binding and unavoidable obligations of the Debtor's estate, shall be secured pursuant to Paragraph 4, shall be entitled to the priority specified in Paragraph 6, and shall be entitled to the protections afforded to good faith lenders under section 364(e) of the Bankruptcy Code, regardless of whether, at the time such advances are made, the Debtor does not actually have the authority or right to borrow such funds and regardless of whether Lender knows or has reason to know that the Debtor lacks such authority or right.

14. **Sale of Assets; Credit for Postpetition Indebtedness**. Renovo intends to purchase assets of the Debtor, obtain the assignment of certain leases and to assume certain liabilities, subject to approval of the Bankruptcy Court. In connection with any such Sale that is approved by the Bankruptcy Court and otherwise ready to close, the outstanding amount of the Postpetition Indebtedness will be converted into credit against the purchase price for such a Sale (the "Credit Conversion").

    a. Under no circumstances shall Debtor propose a plan of reorganization that violates Lender's right to convert the outstanding amount of the Postpetition Indebtedness into Sale consideration consistent with this Agreement, that proposes to sell assets to anyone other than Lender, or that in any way contravenes or is inconsistent with the benefits and rights afforded Lender by this Agreement, without Lender's advance, written consent.

15. **No Waiver By Lender.** Except as otherwise expressly set forth in this Agreement, Lender reserves all rights, objections and claims with respect to the Debtor's estate, and this Agreement does not constitute a waiver or modification of any of Lender's rights or otherwise preclude the exercise of any right or remedy available to Lender. Without limiting the

7

#28576 v1 lax

generality of the foregoing, Lender has not waived its right to object, and has not consented, to any proposed use, sale or lease of property, to the incurrence of any additional indebtedness, to any plan, or to the allowance or payment of any claims, expenses or fees of any entity that is not expressly provided for in this Agreement

16. **No Liability.** In making decisions to make loans for financial accommodations to the Debtor or in taking any other action related to this Agreement, Lender shall have no liability to any third party (including creditors of the Debtor) that is not expressly assumed herein, and Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person or persons" with respect to the operations or management of the Debtor.

17. **Indemnity.** Debtor shall indemnify and hold harmless Lender against any liability arising in connection with this Agreement (other than in the case of gross negligence or willful misconduct by Lender).

18. **Amendments**. Debtor and Lender may enter into amendments or modifications of this Agreement or the Budget without further notice and hearing or order of the Bankruptcy Court provided that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with the Bankruptcy Court.

A.G. Ferrari Foods, Debtor-in-Possession

By: _____
Its  CEO

Renovo Capital LLC

By: _____

Mark Barbeau, Manager and Member