ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.G. Ferrari Foods, Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>A.G. FERRARI FOODS,<br><br>                      Debtor. | Case No. 11-43327 EDJ<br><br>Chapter 11<br><br>**INTRODUCTORY STATEMENT AND CERTIFICATION OF COMPLIANCE WITH GUIDELINES FOR CASH COLLATERAL AND FINANCING MOTIONS AND STIPULATIONS**<br><br>Date: August ___, 2011<br>Time: TBD<br>Ctrm: TBD<br>      U.S. Bankruptcy Court<br>      1300 Clay Street<br>      Oakland, California |

The debtor and debtor-in-possession in the above-captioned bankruptcy case, A.G. Ferrari Foods, (the "Debtor") hereby submits the following Introductory Statement and Certification of Compliance with Guidelines for Cash Collateral and Financing Motions and Stipulations ("Introductory Statement") in connection with that certain Motion for Order Authorizing Post-Petition Financing, Granting Security Interests and Superpriority Claims, and Providing Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 & 364(c) (the "Motion") filed concurrently herewith. This Introductory Statement is submitted pursuant to the Guidelines for Cash Collateral and Financing Motions and Stipulations promulgated by the Court (the "Guidelines").

### A. Material Provisions of the Proposed Financing

In the Motion, the Debtor seeks approval to enter into that certain Agreement for Post-Petition Financing (the "Agreement") by and between the Debtor and Renovo Capital, LLC ("Renovo"), a true and correct copy of which is attached to the Motion ("DIP Loan").

#### 1. Amount of New Money Advanced

The Motion seeks authority to borrow up to an aggregate amount not to exceed $353,000 to make disbursements as necessary for the operating expenses of the Debtor's business and other administrative expenses of the Debtor's bankruptcy case.

#### 2. Interest Rate and Fees

Interest accrues on the DIP Loan advances at 12% per annum from the dates of advances until repayment. Principal and interest shall be due upon expiration of the terms of the Agreement. The Agreement has no fees or prepayment penalty and is a revolving facility.

#### 3. Repayment and Termination Date

The Agreement provides for termination of the loan on the earlier of a Termination Event or a sale of the Debtor's assets to Renovo in which case the post-petition indebtedness will be credited against the purchase price paid by Renovo. The Debtor anticipates that the bulk of the advances will be used for operational expenses of the Debtor pending a sale of its assets to Renovo.

#### 4. Form of Order and Required Disclosures

Pursuant to the Guidelines, a form of proposed order is attached hereto as Exhibit A (the "Order") and the following disclosures are made:

(a) Paragraphs 5 and 6 of the Order grant Renovo a superpriority claim and a blanket lien against all assets of the Debtor (excluding avoidance actions) to secure advances under the DIP Loan, pursuant to Bankruptcy Code § 364(c);

(b) Paragraph 8 of the Order provides for the automatic perfection of the liens granted to Renovo; and

(c) Paragraph 9 of the Order provides a carve-out for the U.S. Trustee's fees, court fees, the reasonable fees of professionals retained by the Debtor and any Official Committee

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

of Unsecured Creditors, and for the reasonable fees and expenses of a subsequently appointed bankruptcy trustee.

        (d)    Paragraph 11 of the Agreement for Post-Petition Financing Pending Sale of Assets does limit the rights of the Debtor and any subsequent trustee to surcharge Renovo's collateral.

        (e)    Paragraph 12 of the Agreement for Post-Petition Financing Pending Sale of Assets does allow the lender, in the event of a default, to seek relief from stay on "shortened time" and that the Debtor will not oppose the request to shorten time.

### 5. Certification

The undersigned Certifying Professional has read the Motion, Agreement and Order and the Introductory Statement; to the best of my knowledge, information and belief, formed after reasonable inquiry, the terms of the relief sought in the Motion are in conformity with the Guidelines. I understand and have advised the Debtor that the Court may grant appropriate relief under Fed. R. Bankr. P. 9024 if the Court determines that a material element of the Motion was not adequately disclosed in the Introductory Statement.

Dated: August 10, 2011

Kornfield, Nyberg, Bendes & Kuhner, P.C.

By: /s/ Eric A. Nyberg
(Bar No. 131105)
Attorneys for A.G. Ferrari Foods, Debtor

# EXHIBIT A

```
ERIC A. NYBERG, ESQ.
(Bar No. 131105)
CHRIS D. KUHNER, ESQ.
(Bar No. 173291)
```
**KORNFIELD, NYBERG,
BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.G. Ferrari Foods, Debtor

## UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| In re | Case No. 11-43327 EDJ |
|---|---|
| A.G. FERRARI FOODS,<br><br>　　　　　　　　　　Debtor. | Chapter 11<br><br>**ORDER AUTHORIZING POST-PETITION FINANCING, GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND PROVIDING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361 & 364(c)** |
| | Date:　August ___, 2011<br>Time:<br>Ctrm:　215<br>　　　　U.S. Bankruptcy Court<br>　　　　1300 Clay Street<br>　　　　Oakland, California |

The Debtor's Motion for Order Authorizing Post-Petition Financing, Granting Security Interests and Superpriority Claims, and Providing Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 & 364(c) (the "Motion") came on for final hearing on August___, 2011 at _____a.m/ p.m. Eric A. Nyberg of Kornfield, Nyberg, Bendes & Kuhner, P.C. appeared on behalf of the

Debtor and other appearances were as noted on the record of the hearing. Any objections to the relief sought in the Motion were either withdrawn or are hereby overruled.

Based on the record before this Court,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A. On March 28, 2011 (the "Petition Date"), the Debtor filed its voluntary petition for relief (the "Bankruptcy Case") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California, Oakland Division, (the "Bankruptcy Court" or "Court"). Since the Petition Date, the Debtor has retained possession of its assets and has continued to operate its business as debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

B. By the Motion, the Debtor is seeking entry of an order authorizing post-petition financing, granting security interest and superpriority claims, and providing adequate protection pursuant to §§ 105, 361 and 364(c) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure and Rule 9014-1 of the Bankruptcy Local Rules, consistent with the terms and conditions set forth in the Agreement for Post-Petition Financing attached hereto as <u>Exhibit A</u> and by this reference incorporated herein (the "DIP Loan Agreement"), which provides for debtor-in-possession financing to be extended by Renovo Capital, LLC ("Renovo").

C. The Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(b) and 1334. This Order is entered in a "core" proceeding as defined in 28 U.S.C. §§ 157(b)(2)(D) and (M).

**Findings Regarding the DIP Financing**

D. The Debtor has an immediate need to obtain the DIP Loan in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors and suppliers, to make capital expenditures, to satisfy other working capital needs, and to stay current with administrative expenses, including professional fees pending an anticipated sale of its assets to Renovo. The ability of the Debtor to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern

-2-

value of the Debtor.

   E.   Renovo is willing to allow the Debtor to obtain financing under the DIP Loan only upon the terms and conditions set forth in this Order.

   F.   The Debtor is unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Bankruptcy Code or pursuant to Sections 364(a) and 364(b) of the Bankruptcy Code. The Debtor is also unable to obtain secured credit allowable under Sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code, except under the terms and conditions set forth in this Order.

   G.   The relief requested in the Motion with respect to the DIP Loan is necessary, essential and appropriate for the continued operations of the Debtor's business and the management and preservation of its property. It is in the best interest of the Debtor's estate to be allowed to enter into, and perform under, the DIP Loan Agreement.

### Notice

   H.   It appears that the Debtor has served the Motion and the Notice of the Hearing, in accordance with F.R.B.P. 4001(c) and the applicable local rules of the Court, on the United States Trustee, the Creditors Committee, and the parties requesting special notice. Such notice is adequate and sufficient notice of the Motion and Hearing under the circumstances.

Based on the foregoing,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

   1.   The Motion is granted on the terms and conditions set forth the Agreement Post-Petition Financing Pending Sale of Assets, a copy of which is attached hereto as Exhibit "A" and is incorporated into and made a part of this order.

   2.   This Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable immediately upon the Court's execution hereof.

***END OF ORDER***

| | |
|---|---|
| 1 | COURT SERVICE LIST |
| 2 | David R. Weinstein, Esq. |
| | Home Roberts and Owen LLP |
| 3 | 800 W Olympic Blvd. 4th Fl. |
| | Los Angeles, CA 90015 |
| 4 | |
| 5 | Eric A. Nyberg, Esq. |
| | Chris D. Kuhner, Esq. |
| 6 | Kornfield, Nyberg, Bendes & Kuhner, P.C. |
| | 1970 Broadway, Suite 225 |
| 7 | Oakland, CA 94612 |
| 8 | |
| | Stephen J. Kottmeier, Esq. |
| 9 | Law Offices of Hopkins and Carley |
| | P.O. Box 1469 |
| 10 | San Jose, CA 95109-1469 |
| 11 | |
| | U.S. Trustee |
| 12 | 1301 Clay Street, Suite 690N |
| | Oakland, CA 94612-5202 |
| 13 | |
| | William C. Lewis, Esq. |
| 14 | Rebecca L. Epstein, Esq. |
| | Law Offices of William C. Lewis |
| 15 | 510 Waverly Street |
| | Palo Alto, CA 94301 |

# EXHIBIT A

# AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS

THIS AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS "Agreement") is made and dated this 10th day of August, 2011, by and between A.G. Ferrari Foods ("Debtor"), and Renovo Capital LLC ("Renovo" or "Lender").

## RECITALS

A. On March 28, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of California (the "Bankruptcy Court"), Case No. 11-43327 EDJ (the " Bankruptcy Case").

B. Debtor and Renovo want to effectuate a sale of certain assets and the assignment of certain leases by Debtor to Renovo. Debtor is in need of capital with which to operate its business pending the sale and Renovo has agreed to lend certain funds to Debtor for that purpose, including the payment of lessors, subject to approval by the Bankruptcy Court, as is provided for herein.

C. Debtor believes and represents that unless it is able to borrow funds from Renovo on the terms and conditions provided for herein, it believes it will be able to operate its business in the ordinary course only for a severely limited period beyond the date of this Agreement and would then likely shut down and liquidate. Debtor therefore also believes and represents that the borrowing of funds provided for herein is reasonable and necessary and is in the best interests of the bankruptcy estate and the Debtor's creditors and other stakeholders, in view of the current circumstances in which the Debtor finds itself.

**WHEREFORE**, based upon the foregoing facts, the parties hereto hereby agree that the Bankruptcy Court should enter an order ("Approval Order") approving the following terms:

1. **Postpetition Borrowings.** Debtor may borrow up to $353,000 from Lender under the terms and conditions set forth in this Agreement ("Loan"). The Loan, together with interest thereon at the annual rate of 12%, is, for purposes of this Agreement, a component of "Postpetition Indebtedness." "Postpetition Indebtedness" also includes all expenses, including reasonable attorneys' fees and costs incurred by Lender in connection with this Agreement, the Loan or the Sale described below, to collect the Postpetition Indebtedness, to prepare and obtain approval of this Agreement, to enforce Lender's rights under the Loan or this Agreement, to conduct due diligence in connection with the Sale or otherwise relating to the Postpetition Indebtedness. As a condition to any obligation of Lender to make advances pursuant to this Agreement, the Bankruptcy Court shall have entered the Approval Order which authorizes and approves this Agreement and the transactions contemplated by it.

2. **Mandatory and Discretionary Advances.** Unless and until a "Termination Event" described in Paragraph 10 below occurs, and subject to the Debtor satisfying the sale and

1

#28576 v1 lax

performance projections provided for in Exhibit A ("Daily Cash Projections") Lender shall advance to Debtor the funds required to pay the expenditures set forth in the Daily Cash Projections (the "Budget") upon written request of Debtor, up to a total of $250,000 (collectively, the "Mandatory Advances"). Other than the Mandatory Advances, Lender shall have the right, in its sole and absolute discretion, to make or decline to make advances requested by Debtor ("Discretionary Advances"). In no event will the Discretionary Advances exceed the principal sum of $103,000 in the aggregate.

3. **Collateral.** As security for the Postpetition Indebtedness, Debtor hereby grants to Lender security interests and liens upon all tangible and intangible property of the Debtor and its estate, of any kind or nature whatsoever, including but not limited to all of the following property of the Debtor and its estate now owned or hereafter acquired, which property is referred to as the "Collateral" (Collateral owned at the Petition Date is referred to here as "Prepetition Collateral"; Collateral acquired by the debtor on or after the Petition Date is referred to here as "Postpetition Collateral"):

    a.    all "Accounts" as defined in the California Commercial Code (the "UCC");

    b.    All "Certificates of Title" as defined in the UCC;

    c.    all "Chattel Paper" as defined in the UCC;

    d.    all "Commercial Tort Claims" as defined in the UCC;

    e.    all "Commodity Accounts" and "Commodity Contracts" as defined in the UCC;

    f.    all "Deposit Accounts" as defined in the UCC;

    g.    all "Documents" as defined in the UCC;

    h.    all "Electronic Chattel Paper" as defined in the UCC;

    i.    all "Equipment," as defined in the UCC;

    j.    all "Fixtures" as defined in the UCC;

    k.    all "Goods" as defined in the UCC;

    l.    all "General Intangibles" as defined in the UCC;

    m.    all "Instruments" as defined in the UCC;

  n.  all "Inventory" as defined in the UCC;

  o.  all "Investment Property" as defined in the UCC;

  p.  all "Letter-of-Credit rights" as defined in the UCC;

  q.  all "Money" as defined in the UCC;

  r.  all "Promissory Notes" as defined in the UCC;

  s.  all "Supporting obligations" as defined in the UCC;

  t.  all "Tangible chattel paper" as defined in the UCC;

  u.  all "Proceeds" of the foregoing as defined in the UCC;

  v.  all books and records relating to any of the foregoing;

  w.  all other property and interests in property now owned or hereafter acquired by the Debtor's estate, including all causes of action existing as of the Petition Date and their proceeds, but excluding causes of action arising under the Bankruptcy Code or coming into existence as a result of the petition or after the Petition Date;

  x.  to the extent not included in the Collateral by reason of the foregoing categories of Collateral, the Collateral includes an obligation owed to the Debtor by Paul Ferrari in the amount of **$42,000** that arises from or in connection with the Restated Executive Employment Agreement dated August 16, 2001 between Paul Ferrari and the Debtor, as subsequently amended ("Paul Ferrari Payable"); the Debtor's websites, sources codes pertinent to those websites and customer lists; and all trademarks, trade names, copyrights, logos and other intellectual or intangible property.

With respect to Prepetition Collateral that is subject to a valid and perfected lien on the Petition Date ("Valid Prepetition Liens"), Lender's security interests and liens shall be junior to the Valid Prepetition Liens and with respect to Postpetition Collateral that has been provided to Bridge Bank pursuant to the various cash collateral agreements Lender shall have a junior security interest; Lender shall have a first priority senior lien on all other Prepetition Collateral and other Postpetition Collateral.

  4.  **Powers As Secured Creditor.** Lender shall have all of the rights and powers of a "Secured Party" under the UCC with respect to the Collateral.

  5.  **Repayment Of Postpetition Indebtedness.** Subject to the provisions of paragraph 14 below relative to treatment of the Postpetition Indebtedness under the "Credit Conversion", the Postpetition Indebtedness shall be due and payable upon the occurrence of a

Termination Event; *provided, however,* that prior to the occurrence of a Termination Event, if at any time Debtor possesses money or cash equivalents that exceed the remaining amount of expenses set forth in the Budget (a "Surplus"), at Lender's discretion, to be exercised reasonably, the Surplus shall be turned over to Lender and applied by Lender to the Postpetition Indebtedness in the following order: (i) first to the outstanding fees, costs and expenses of Lender incurred with respect to the Postpetition Indebtedness, (ii) then to outstanding accrued interest on the Postpetition Indebtedness, and (iii) then to reduce the principal amount of the Postpetition Indebtedness. Furthermore, if the Sale occurs prior to the occurrence of a Termination Date, the Postpetition Indebtedness will be credited against the purchase price of the Sale.

6. **Priority Of Postpetition Indebtedness**. All Postpetition Indebtedness shall be an expense of administration pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code and, except as provided in Paragraph 3, shall have priority, under sections 364(c)(1) and 507(b) of the Bankruptcy Code, over all other administrative expenses incurred in the Bankruptcy Case, including administrative expenses of the kind specified in or authorized pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code, subject only to the "Carve Out". For avoidance of doubt: no party shall be entitled, at any time in this chapter 11 Bankruptcy Case or any subsequent chapter 7 phase of the Bankruptcy Case, to any order which authorizes the Debtor or any trustee to obtain credit or to incur debt, under section 364 of the Bankruptcy Code or otherwise, that has repayment priority equal or senior to, or is secured by a lien or security interest which is equal or senior to a lien or security interest held by Lender, without Lender's prior written consent.

7. **Carve Out For Certain Expenses**. Notwithstanding anything to the contrary herein, including the occurrence of a Termination Event, there shall be a "Carve Out" from the amounts payable to Lender from the Collateral, and the claims and liens of Lender on the Collateral shall be subordinated to (a) the quarterly fees of the Office of the United States Trustee incurred prior to the occurrence of a Termination Event, and (b) fees payable to the Clerk of the Bankruptcy Court; and (c) the allowed fees and expenses of the Debtor's professionals and professionals employed by the Official Committee of Unsecured Creditors, not to exceed $80,000 in the aggregate, net of any retainers, incurred prior to the occurrence of a Termination Event (collectively, the "Carved Out Expenses"); *provided, however,* that the Carve Out and subordination provided for in this Paragraph 7 shall not apply to any fees, costs or expenses incurred in this Bankruptcy Case (other than the United States Trustee's quarterly fees) in (i) the advancement of any adversary proceeding or contested matter against Lender or any other adversary proceeding or contested matter that Lender opposes, (ii) the opposition to any application, motion or complaint filed or supported by Lender, or (iii) the advancement of any plan of reorganization not supported by Lender.

8. **Perfection Of Postpetition Liens**. The liens and security interests in the Collateral securing the Postpetition Indebtedness granted by Debtor in this Agreement shall be automatically perfected upon entry of the Approval Order and Lender is not be required to file or

4

record any documents or to take any further steps in order to perfect such liens and security interests. Nevertheless, if Lender, in its discretion, elects for any reason to file or record any financing statements, notices or other documents with respect to the Collateral or the Postpetition Indebtedness, the Debtor shall promptly execute such documents as Lender may request. Lender is authorized to effectuate such filings and recordings, and such filings and recordings shall be deemed to have been made effective as of the date of this Agreement. Debtor shall perform all acts, and execute and comply with the terms of such other documents, instruments and agreements as Lender may require or which Lender otherwise deems necessary, in its sole discretion, to effectuate the purpose, terms or conditions of this Agreement and the transactions contemplated by it.

9. **Additional Adequate Protection**. As additional adequate protection for Lender, the Debtor shall: (a) upon Lender's request, promptly provide Lender with weekly cash flow reports, monthly, quarterly and annual financial statements for Debtor, monthly financial projections delivered quarterly, and other reports as may be reasonably requested by Lender, such annual financial statements to be audited for Debtor, in a manner satisfactory to Lender; (b) upon reasonable notice from Lender, provide Lender access reasonably necessary for the inspection of the Collateral and to review all records of the Debtor; and (c) upon the request of Lender, provide to Lender any other information reasonably requested by it.

10. **Termination Events**. Upon the occurrence of any of the following events ("Termination Events"), and at the election of Lender (a) Lender shall no longer be required to make any Mandatory Advances and all advances thereafter shall be Discretionary Advances, (b) all Postpetition Indebtedness shall be due and owing, and (c) if the Debtor does not repay the outstanding Postpetition Indebtedness within seven days of a Termination Event, Lender may seek, on shortened time, relief from the automatic stay to exercise all rights and remedies as a secured creditor. Termination Events include:

    a. The occurrence of September 8, 2011 unless said date is extended by agreement with the landlords for San Leandro, Berkeley and Castro Street locations;

    b. The occurrence of August 19, 2011, without entry of the Approval Order and any final or subsequent order contemplated by the Approval Order;

    c. The occurrence of August 19, 2011, without the filing of a Sale Motion to effectuate as described in Paragraph 14;

    d. Failure by the Debtor to pay principal, interest or fees when due, with that circumstance continuing for more than two business days;

    e. The Debtor's breach of any other covenant or obligation in this Agreement, where that breach continues for more than ten days;

5

#28576 v1 lax

        f.        The Bankruptcy Case is dismissed or converted to a chapter 7 case;

        g.        A chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case and the order appointing such trustee, responsible officer, or examiner is not stayed, reversed or vacated within 10 days after its entry;

        h.        Any expense of administration or claim (other than the Carve Out) that is of equal or senior priority to the claims of Lender is granted in the Bankruptcy Case;

        i.        Any postpetition security interest or lien on the Collateral, other than the security interest and lien granted to Lender, is authorized in the Bankruptcy Case;

        j.        The Court enters an order granting relief from the automatic stay to the holder of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Debtor that comprise the Collateral;

        k.        Debtor fails to maintain in full force and effect an insurance policy(ies) insuring the Collateral for its full replacement value and that names Lender as loss payee and additional insured;

        l.        Any material provision of the Agreement shall cease to be valid and binding on Debtor, or Debtor so asserts in any pleading filed in any court;

        m.        An order is entered reversing, amending, supplementing, staying for a period in excess of two days, vacating or otherwise modifying the Approval Order or any other order implementing or effectuating the provisions of this Agreement or the transactions contemplated by it;

        n.        Any judgment as to any postpetition obligation is rendered against Debtor and the enforcement thereof is not stayed, or there is rendered against Debtor a nonmonetary judgment with respect to a postpetition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the ability of the Debtor to perform its obligations under the Agreement;

        o.        Debtor files, or the Court confirms, a reorganization plan that does not incorporate the Sale and Lender's rights pertinent thereto.

    11.    **No Surcharge.** In light of and as additional consideration for the Carve Out, the Debtor hereby waives any right it may have, on behalf of itself, its professionals, its estate, any administrative claimant or creditor and any trustee that may be appointed in this chapter 11 case or any chapter 7 phase of the Bankruptcy Case into which it might be converted, to seek to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, for any

6

costs and expenses of the estate or to otherwise seek reimbursement from Lender for any such costs and expenses. If, notwithstanding the preceding provisions of this Paragraph 11, the Bankruptcy Court issues an order surcharging the Collateral under section 506(c) of the Bankruptcy Code, then the Carve Out shall be credited against and considered payment upon such surcharge.

12. **Relief From Stay.** Debtor agrees that if Lender reasonably requires relief from the automatic stay of section 362(a) of the Bankruptcy Code to permit Lender to take actions necessary or appropriate to carry out the provisions or the purposes of this Agreement, including any action to recover the Postpetition Indebtedness or to enforce the security interests and liens securing repayment of the Postpetition Indebtedness in the event that the Debtor shall fail to pay the Postpetition Indebtedness when due, then Lender may seek such relief on "shortened time" in conformity with the Bankruptcy Court's Local Rules and other applicable rules of practice, and Debtor will not oppose Lender's requests of the court to shorten time. No waiver of the Debtor's right to oppose the request for relief from the automatic stay is implied or agreed to.

13. **Good Faith Advances.** Any advances made by Lender to the Debtor, including advances made prior to Bankruptcy Court approval of this Agreement, shall be binding and unavoidable obligations of the Debtor's estate, shall be secured pursuant to Paragraph 4, shall be entitled to the priority specified in Paragraph 6, and shall be entitled to the protections afforded to good faith lenders under section 364(e) of the Bankruptcy Code, regardless of whether, at the time such advances are made, the Debtor does not actually have the authority or right to borrow such funds and regardless of whether Lender knows or has reason to know that the Debtor lacks such authority or right.

14. **Sale of Assets; Credit for Postpetition Indebtedness**. Renovo intends to purchase assets of the Debtor, obtain the assignment of certain leases and to assume certain liabilities, subject to approval of the Bankruptcy Court. In connection with any such Sale that is approved by the Bankruptcy Court and otherwise ready to close, the outstanding amount of the Postpetition Indebtedness will be converted into credit against the purchase price for such a Sale (the "Credit Conversion").

    a. Under no circumstances shall Debtor propose a plan of reorganization that violates Lender's right to convert the outstanding amount of the Postpetition Indebtedness into Sale consideration consistent with this Agreement, that proposes to sell assets to anyone other than Lender, or that in any way contravenes or is inconsistent with the benefits and rights afforded Lender by this Agreement, without Lender's advance, written consent.

15. **No Waiver By Lender.** Except as otherwise expressly set forth in this Agreement, Lender reserves all rights, objections and claims with respect to the Debtor's estate, and this Agreement does not constitute a waiver or modification of any of Lender's rights or otherwise preclude the exercise of any right or remedy available to Lender. Without limiting the

7

#28576 v1 lax

generality of the foregoing, Lender has not waived its right to object, and has not consented, to any proposed use, sale or lease of property, to the incurrence of any additional indebtedness, to any plan, or to the allowance or payment of any claims, expenses or fees of any entity that is not expressly provided for in this Agreement

16. **No Liability.** In making decisions to make loans for financial accommodations to the Debtor or in taking any other action related to this Agreement, Lender shall have no liability to any third party (including creditors of the Debtor) that is not expressly assumed herein, and Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person or persons" with respect to the operations or management of the Debtor.

17. **Indemnity.** Debtor shall indemnify and hold harmless Lender against any liability arising in connection with this Agreement (other than in the case of gross negligence or willful misconduct by Lender).

18. **Amendments**. Debtor and Lender may enter into amendments or modifications of this Agreement or the Budget without further notice and hearing or order of the Bankruptcy Court provided that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with the Bankruptcy Court.

A.G. Ferrari Foods, Debtor-in-Possession

By: _____
Its _____CEO_____

Renovo Capital LLC

By: _____
Mark Barbeau, Manager and Member

8

#28576 v1 lax