ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.G. Ferrari Foods, Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-43327 EDJ |
| A.G. FERRARI FOODS, | Chapter 11 |
| Debtor. | **DECLARATION OF PATRICIA T. SAUCY IN SUPPORT OF MOTION FOR ORDER AUTHORIZING POST-PETITION FINANCING, GRANTING SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND PROVIDING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 105, 361 & 364(c)** |

Date: August ___, 2011
Time: TBD
Ctrm: TBD
U.S. Bankruptcy Court
1300 Clay Street
Oakland, California

I, Patricia T. Saucy, declare as follows:

1.      I am the Chief Financial Officer of A.G. Ferrari Foods, debtor and debtor-in-possession (the "Debtor"), in the above-captioned Chapter 11 bankruptcy case.

2.      I know the following of my own personal knowledge and could and would testify competently thereto if called upon to do so.

Case: 11-43327   Doc# 148   Filed: 08/10/11   Entered: 08/10/11 17:05:07   Page 1 of 17

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

3.     This declaration is filed in support of the Debtor's Motion for Order Authorizing Post-Petition Financing, Granting Security Interests and Superpriority Claims, and Providing Adequate Protection Pursuant to 11 U.S.C. §§ 105, 361 & 364(c) (the "Motion"). By this Motion, the Debtor seeks entry of an order authorizing the Debtor to borrow up to $353,000 from Renovo Capital, LLC ("Renovo") on a secured and superpriority basis and on the terms set forth in the Agreement for Post-Petition Financing attached to the Motion as <u>Exhibit A</u> (the "DIP Loan Agreement").

4.     The Debtor has executed a term sheet with Renovo pursuant to which Renovo proposes to purchase the assets of the Debtor and to assume certain liabilities (the "Term Sheet").

5.     The DIP Loan Agreement is contemplated and is a part of the terms of the Term Sheet.

6.     The Debtor's primary secured creditor is Bridge Bank ("Bridge"). Bridge has a blanket lien on all of the assets of the Debtor. As of August 9, 2011, the unpaid balance owing by the Debtor to Bridge is $100,107.94.

7.     The Debtor believes that the debtor-in-possession financing arrangement which is memorialized in the DIP Loan Agreement is necessary for the Debtor to be able to meet its post-petition obligations and keep operating pending the contemplated sale of its assets to Renovo. Renovo wants to acquire the assets from the Debtor as a going concern.

8.     Attached here as <u>Exhibit B</u> is a copy of the Cash Flow Forecast for the Debtor showing the need for financing from Renovo.

9.     I believe that financing transaction memorialized in the DIP Loan Agreement is necessary, essential and appropriate for the continued operations of the Debtor's business pending a sale to Renovo. I believe it is in the best interest of the Debtor's estate to be allowed to enter into, and perform under, the DIP Loan Agreement.

10.     It is my understanding that the DIP Loan Agreement and the financing provided for under it is supported by Creditors Committee in this bankruptcy case.

11.     Given the Debtor's current financial condition, it is not possible for the Debtor to obtain post-petition financing on an unsecured basis.

Dec. of Patricia T. Saucy in Support of Motion for Order
Authorizing Post-Petition Financing

-2-

1    I declare under penalty of perjury that the foregoing is true and correct and that this

2    declaration was executed this _10th_ day of August, 2011 at San Leandro, California.

3

4

5                                                    /s/ Patricia T. Saucy

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX (510) 273-8669

# EXHIBIT A

## AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS

THIS AGREEMENT FOR POSTPETITION FINANCING PENDING SALE OF ASSETS "Agreement") is made and dated this 10th day of August, 2011, by and between A.G. Ferrari Foods ("Debtor"), and Renovo Capital LLC ("Renovo" or "Lender").

## RECITALS

A.      On March 28, 2011 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Northern District of California (the "Bankruptcy Court"), Case No. 11-43327 EDJ (the " Bankruptcy Case").

B.      Debtor and Renovo want to effectuate a sale of certain assets and the assignment of certain leases by Debtor to Renovo. Debtor is in need of capital with which to operate its business pending the sale and Renovo has agreed to lend certain funds to Debtor for that purpose, including the payment of lessors, subject to approval by the Bankruptcy Court, as is provided for herein.

C.      Debtor believes and represents that unless it is able to borrow funds from Renovo on the terms and conditions provided for herein, it believes it will be able to operate its business in the ordinary course only for a severely limited period beyond the date of this Agreement and would then likely shut down and liquidate. Debtor therefore also believes and represents that the borrowing of funds provided for herein is reasonable and necessary and is in the best interests of the bankruptcy estate and the Debtor's creditors and other stakeholders, in view of the current circumstances in which the Debtor finds itself.

WHEREFORE, based upon the foregoing facts, the parties hereto hereby agree that the Bankruptcy Court should enter an order ("Approval Order") approving the following terms:

1.      **Postpetition Borrowings.** Debtor may borrow up to $353,000 from Lender under the terms and conditions set forth in this Agreement ("Loan"). The Loan, together with interest thereon at the annual rate of 12%, is, for purposes of this Agreement, a component of "Postpetition Indebtedness." "Postpetition Indebtedness" also includes all expenses, including reasonable attorneys' fees and costs incurred by Lender in connection with this Agreement, the Loan or the Sale described below, to collect the Postpetition Indebtedness, to prepare and obtain approval of this Agreement, to enforce Lender's rights under the Loan or this Agreement, to conduct due diligence in connection with the Sale or otherwise relating to the Postpetition Indebtedness. As a condition to any obligation of Lender to make advances pursuant to this Agreement, the Bankruptcy Court shall have entered the Approval Order which authorizes and approves this Agreement and the transactions contemplated by it.

2.      **Mandatory and Discretionary Advances.** Unless and until a "Termination Event" described in Paragraph 10 below occurs, and subject to the Debtor satisfying the sale and

1

performance projections provided for in Exhibit A ("Daily Cash Projections") Lender shall advance to Debtor the funds required to pay the expenditures set forth in the Daily Cash Projections (the "Budget") upon written request of Debtor, up to a total of $250,000 (collectively, the "Mandatory Advances"). Other than the Mandatory Advances, Lender shall have the right, in its sole and absolute discretion, to make or decline to make advances requested by Debtor ("Discretionary Advances"). In no event will the Discretionary Advances exceed the principal sum of $103,000 in the aggregate.

3.    **Collateral.** As security for the Postpetition Indebtedness, Debtor hereby grants to Lender security interests and liens upon all tangible and intangible property of the Debtor and its estate, of any kind or nature whatsoever, including but not limited to all of the following property of the Debtor and its estate now owned or hereafter acquired, which property is referred to as the "Collateral" (Collateral owned at the Petition Date is referred to here as "Prepetition Collateral"; Collateral acquired by the debtor on or after the Petition Date is referred to here as "Postpetition Collateral"):

a.    all "Accounts" as defined in the California Commercial Code (the "UCC");

b.    All "Certificates of Title" as defined in the UCC;

c.    all "Chattel Paper" as defined in the UCC;

d.    all "Commercial Tort Claims" as defined in the UCC;

e.    all "Commodity Accounts" and "Commodity Contracts" as defined in the UCC;

f.    all "Deposit Accounts" as defined in the UCC;

g.    all "Documents" as defined in the UCC;

h.    all "Electronic Chattel Paper" as defined in the UCC;

i.    all "Equipment," as defined in the UCC;

j.    all "Fixtures" as defined in the UCC;

k.    all "Goods" as defined in the UCC;

l.    all "General Intangibles" as defined in the UCC;

m.    all "Instruments" as defined in the UCC;

2

#28576 v1 lax

n.      all "Inventory" as defined in the UCC;

o.      all "Investment Property" as defined in the UCC;

p.      all "Letter-of-Credit rights" as defined in the UCC;

q.      all "Money" as defined in the UCC;

r.      all "Promissory Notes" as defined in the UCC;

s.      all "Supporting obligations" as defined in the UCC;

t.      all "Tangible chattel paper" as defined in the UCC;

u.      all "Proceeds" of the foregoing as defined in the UCC;

v.      all books and records relating to any of the foregoing;

w.      all other property and interests in property now owned or hereafter acquired by the Debtor's estate, including all causes of action existing as of the Petition Date and their proceeds, but excluding causes of action arising under the Bankruptcy Code or coming into existence as a result of the petition or after the Petition Date;

x.      to the extent not included in the Collateral by reason of the foregoing categories of Collateral, the Collateral includes an obligation owed to the Debtor by Paul Ferrari in the amount of **$42,000** that arises from or in connection with the Restated Executive Employment Agreement dated August 16, 2001 between Paul Ferrari and the Debtor, as subsequently amended ("Paul Ferrari Payable"); the Debtor's websites, sources codes pertinent to those websites and customer lists; and all trademarks, trade names, copyrights, logos and other intellectual or intangible property.

With respect to Prepetition Collateral that is subject to a valid and perfected lien on the Petition Date ("Valid Prepetition Liens"), Lender's security interests and liens shall be junior to the Valid Prepetition Liens and with respect to Postpetition Collateral that has been provided to Bridge Bank pursuant to the various cash collateral agreements Lender shall have a junior security interest; Lender shall have a first priority senior lien on all other Prepetition Collateral and other Postpetition Collateral.

4.      **Powers As Secured Creditor.**  Lender shall have all of the rights and powers of a "Secured Party" under the UCC with respect to the Collateral.

5.      **Repayment Of Postpetition Indebtedness.**  Subject to the provisions of paragraph 14 below relative to treatment of the Postpetition Indebtedness under the "Credit Conversion", the Postpetition Indebtedness shall be due and payable upon the occurrence of a

3

#28576 v1 lax

Termination Event; *provided, however,* that prior to the occurrence of a Termination Event, if at any time Debtor possesses money or cash equivalents that exceed the remaining amount of expenses set forth in the Budget (a "Surplus"), at Lender's discretion, to be exercised reasonably, the Surplus shall be turned over to Lender and applied by Lender to the Postpetition Indebtedness in the following order: (i) first to the outstanding fees, costs and expenses of Lender incurred with respect to the Postpetition Indebtedness, (ii) then to outstanding accrued interest on the Postpetition Indebtedness, and (iii) then to reduce the principal amount of the Postpetition Indebtedness. Furthermore, if the Sale occurs prior to the occurrence of a Termination Date, the Postpetition Indebtedness will be credited against the purchase price of the Sale.

6. **Priority Of Postpetition Indebtedness**. All Postpetition Indebtedness shall be an expense of administration pursuant to sections 503(b) and 507(a)(1) of the Bankruptcy Code and, except as provided in Paragraph 3, shall have priority, under sections 364(c)(1) and 507(b) of the Bankruptcy Code, over all other administrative expenses incurred in the Bankruptcy Case, including administrative expenses of the kind specified in or authorized pursuant to sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) and 726 of the Bankruptcy Code, subject only to the "Carve Out". For avoidance of doubt: no party shall be entitled, at any time in this chapter 11 Bankruptcy Case or any subsequent chapter 7 phase of the Bankruptcy Case, to any order which authorizes the Debtor or any trustee to obtain credit or to incur debt, under section 364 of the Bankruptcy Code or otherwise, that has repayment priority equal or senior to, or is secured by a lien or security interest which is equal or senior to a lien or security interest held by Lender, without Lender's prior written consent.

7. **Carve Out For Certain Expenses**. Notwithstanding anything to the contrary herein, including the occurrence of a Termination Event, there shall be a "Carve Out" from the amounts payable to Lender from the Collateral, and the claims and liens of Lender on the Collateral shall be subordinated to (a) the quarterly fees of the Office of the United States Trustee incurred prior to the occurrence of a Termination Event, and (b) fees payable to the Clerk of the Bankruptcy Court; and (c) the allowed fees and expenses of the Debtor's professionals and professionals employed by the Official Committee of Unsecured Creditors, not to exceed $80,000 in the aggregate, net of any retainers, incurred prior to the occurrence of a Termination Event (collectively, the "Carved Out Expenses"); *provided, however*, that the Carve Out and subordination provided for in this Paragraph 7 shall not apply to any fees, costs or expenses incurred in this Bankruptcy Case (other than the United States Trustee's quarterly fees) in (i) the advancement of any adversary proceeding or contested matter against Lender or any other adversary proceeding or contested matter that Lender opposes, (ii) the opposition to any application, motion or complaint filed or supported by Lender, or (iii) the advancement of any plan of reorganization not supported by Lender.

8. **Perfection Of Postpetition Liens**. The liens and security interests in the Collateral securing the Postpetition Indebtedness granted by Debtor in this Agreement shall be automatically perfected upon entry of the Approval Order and Lender is not be required to file or

#28576 v1 lax

record any documents or to take any further steps in order to perfect such liens and security interests. Nevertheless, if Lender, in its discretion, elects for any reason to file or record any financing statements, notices or other documents with respect to the Collateral or the Postpetition Indebtedness, the Debtor shall promptly execute such documents as Lender may request. Lender is authorized to effectuate such filings and recordings, and such filings and recordings shall be deemed to have been made effective as of the date of this Agreement. Debtor shall perform all acts, and execute and comply with the terms of such other documents, instruments and agreements as Lender may require or which Lender otherwise deems necessary, in its sole discretion, to effectuate the purpose, terms or conditions of this Agreement and the transactions contemplated by it.

9. **Additional Adequate Protection**. As additional adequate protection for Lender, the Debtor shall: (a) upon Lender's request, promptly provide Lender with weekly cash flow reports, monthly, quarterly and annual financial statements for Debtor, monthly financial projections delivered quarterly, and other reports as may be reasonably requested by Lender, such annual financial statements to be audited for Debtor, in a manner satisfactory to Lender; (b) upon reasonable notice from Lender, provide Lender access reasonably necessary for the inspection of the Collateral and to review all records of the Debtor; and (c) upon the request of Lender, provide to Lender any other information reasonably requested by it.

10. **Termination Events**. Upon the occurrence of any of the following events ("Termination Events"), and at the election of Lender (a) Lender shall no longer be required to make any Mandatory Advances and all advances thereafter shall be Discretionary Advances, (b) all Postpetition Indebtedness shall be due and owing, and (c) if the Debtor does not repay the outstanding Postpetition Indebtedness within seven days of a Termination Event, Lender may seek, on shortened time, relief from the automatic stay to exercise all rights and remedies as a secured creditor. Termination Events include:

      a. The occurrence of September 8, 2011 unless said date is extended by agreement with the landlords for San Leandro, Berkeley and Castro Street locations;

      b. The occurrence of August 19, 2011, without entry of the Approval Order and any final or subsequent order contemplated by the Approval Order;

      c. The occurrence of August 19, 2011, without the filing of a Sale Motion to effectuate as described in Paragraph 14;

      d. Failure by the Debtor to pay principal, interest or fees when due, with that circumstance continuing for more than two business days;

      e. The Debtor's breach of any other covenant or obligation in this Agreement, where that breach continues for more than ten days;

#28576 v1 lax

f. The Bankruptcy Case is dismissed or converted to a chapter 7 case;

g. A chapter 11 trustee, a responsible officer or an examiner with enlarged powers relating to the operation of the business of the Debtor (powers beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in the Bankruptcy Case and the order appointing such trustee, responsible officer, or examiner is not stayed, reversed or vacated within 10 days after its entry;

h. Any expense of administration or claim (other than the Carve Out) that is of equal or senior priority to the claims of Lender is granted in the Bankruptcy Case;

i. Any postpetition security interest or lien on the Collateral, other than the security interest and lien granted to Lender, is authorized in the Bankruptcy Case;

j. The Court enters an order granting relief from the automatic stay to the holder of any security interest to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on any assets of Debtor that comprise the Collateral;

k. Debtor fails to maintain in full force and effect an insurance policy(ies) insuring the Collateral for its full replacement value and that names Lender as loss payee and additional insured;

l. Any material provision of the Agreement shall cease to be valid and binding on Debtor, or Debtor so asserts in any pleading filed in any court;

m. An order is entered reversing, amending, supplementing, staying for a period in excess of two days, vacating or otherwise modifying the Approval Order or any other order implementing or effectuating the provisions of this Agreement or the transactions contemplated by it;

n. Any judgment as to any postpetition obligation is rendered against Debtor and the enforcement thereof is not stayed, or there is rendered against Debtor a nonmonetary judgment with respect to a postpetition event which causes or would reasonably be expected to cause a material adverse change or a material adverse effect on the ability of the Debtor to perform its obligations under the Agreement;

o. Debtor files, or the Court confirms, a reorganization plan that does not incorporate the Sale and Lender's rights pertinent thereto.

11. **No Surcharge.** In light of and as additional consideration for the Carve Out, the Debtor hereby waives any right it may have, on behalf of itself, its professionals, its estate, any administrative claimant or creditor and any trustee that may be appointed in this chapter 11 case or any chapter 7 phase of the Bankruptcy Case into which it might be converted, to seek to surcharge the Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise, for any

6

Case: 11-43327   Doc# 148   Filed: 08/10/11   Entered: 08/10/11 17:05:07   Page 10 of 17

costs and expenses of the estate or to otherwise seek reimbursement from Lender for any such costs and expenses. If, notwithstanding the preceding provisions of this Paragraph 11, the Bankruptcy Court issues an order surcharging the Collateral under section 506(c) of the Bankruptcy Code, then the Carve Out shall be credited against and considered payment upon such surcharge.

12. **Relief From Stay.** Debtor agrees that if Lender reasonably requires relief from the automatic stay of section 362(a) of the Bankruptcy Code to permit Lender to take actions necessary or appropriate to carry out the provisions or the purposes of this Agreement, including any action to recover the Postpetition Indebtedness or to enforce the security interests and liens securing repayment of the Postpetition Indebtedness in the event that the Debtor shall fail to pay the Postpetition Indebtedness when due, then Lender may seek such relief on "shortened time" in conformity with the Bankruptcy Court's Local Rules and other applicable rules of practice, and Debtor will not oppose Lender's requests of the court to shorten time. No waiver of the Debtor's right to oppose the request for relief from the automatic stay is implied or agreed to.

13. **Good Faith Advances.** Any advances made by Lender to the Debtor, including advances made prior to Bankruptcy Court approval of this Agreement, shall be binding and unavoidable obligations of the Debtor's estate, shall be secured pursuant to Paragraph 4, shall be entitled to the priority specified in Paragraph 6, and shall be entitled to the protections afforded to good faith lenders under section 364(e) of the Bankruptcy Code, regardless of whether, at the time such advances are made, the Debtor does not actually have the authority or right to borrow such funds and regardless of whether Lender knows or has reason to know that the Debtor lacks such authority or right.

14. **Sale of Assets; Credit for Postpetition Indebtedness**. Renovo intends to purchase assets of the Debtor, obtain the assignment of certain leases and to assume certain liabilities, subject to approval of the Bankruptcy Court. In connection with any such Sale that is approved by the Bankruptcy Court and otherwise ready to close, the outstanding amount of the Postpetition Indebtedness will be converted into credit against the purchase price for such a Sale (the "Credit Conversion").

      a. Under no circumstances shall Debtor propose a plan of reorganization that violates Lender's right to convert the outstanding amount of the Postpetition Indebtedness into Sale consideration consistent with this Agreement, that proposes to sell assets to anyone other than Lender, or that in any way contravenes or is inconsistent with the benefits and rights afforded Lender by this Agreement, without Lender's advance, written consent.

15. **No Waiver By Lender.** Except as otherwise expressly set forth in this Agreement, Lender reserves all rights, objections and claims with respect to the Debtor's estate, and this Agreement does not constitute a waiver or modification of any of Lender's rights or otherwise preclude the exercise of any right or remedy available to Lender. Without limiting the

7

#28576 v1 lax

generality of the foregoing, Lender has not waived its right to object, and has not consented, to any proposed use, sale or lease of property, to the incurrence of any additional indebtedness, to any plan, or to the allowance or payment of any claims, expenses or fees of any entity that is not expressly provided for in this Agreement

16. **No Liability.** In making decisions to make loans for financial accommodations to the Debtor or in taking any other action related to this Agreement, Lender shall have no liability to any third party (including creditors of the Debtor) that is not expressly assumed herein, and Lender shall not be deemed to be in control of the operations of the Debtor or to be acting as a "responsible person or persons" with respect to the operations or management of the Debtor.

17. **Indemnity.** Debtor shall indemnify and hold harmless Lender against any liability arising in connection with this Agreement (other than in the case of gross negligence or willful misconduct by Lender).

18. **Amendments**. Debtor and Lender may enter into amendments or modifications of this Agreement or the Budget without further notice and hearing or order of the Bankruptcy Court provided that (a) such modifications or amendments do not materially and adversely affect the rights of any creditor or other party-in-interest and (b) notice of any such amendment or modification is filed with the Bankruptcy Court.

A.G. Ferrari Foods, Debtor-in-Possession

By: _____
Its _____

Renovo Capital LLC

By: _____

Mark Barbeau, Manager and Member

8

# EXHIBIT B

| Daily Cash Projections | 8-Aug | 9-Aug | 10-Aug | 11-Aug | 12-Aug | 15-Aug | 16-Aug | 17-Aug | 18-Aug | 19-Aug | 22-Aug | 23-Aug | 24-Aug | 25-Aug |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Primary Depository (Credit Card Deposits from Stores)** | | | | | | | | | | | | | | |
| Beginning Daily Cash Balance | 54,751 | 15,817 | 64,517 | 45,552 | 46,052 | 35,736 | 50,262 | 73,738 | 42,738 | 14,315 | (22,805) | (34,305) | (46,669) | (57,669) |
| Credit Card Deposits (Stores) | 14,356 | 37,000 | 12,000 | 10,000 | 10,000 | 15,000 | 35,000 | 10,000 | 8,000 | 8,000 | 15,000 | 36,000 | 8,000 | 10,000 |
| Card Deposits (SL & Wholesale) | 6,901 | 2,500 | | 2,500 | 4,000 | | 2,500 | | 2,500 | | | | | |
| Web Deposits (Amazon) | 850 | | | | | | | | | | | | | |
| Wire Deposits | | | | | | | | | | | | | | |
| Transfers from Store Depository | | 30,000 | | | 20,000 | 10,000 | | 30,000 | | | 20,000 | | | 20,000 |
| **Ending Cash Balance for Primary Depository Acct** | 76,857 | 85,317 | 76,517 | 58,052 | 80,052 | 60,736 | 87,762 | 113,738 | 53,238 | 22,315 | 12,195 | 1,695 | (38,669) | (27,669) |
| **Store Depository (Cash Deposits from Stores and A/R Payments)** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 11,013 | 34,337 | 17,337 | 22,337 | 27,337 | 12,337 | 15,337 | 31,337 | 5,337 | 12,337 | 17,337 | 6,337 | 20,337 | 25,337 |
| Cash Deposits (Stores) | 2,702 | 13,000 | 5,000 | 5,000 | 5,000 | 13,000 | 13,000 | 4,000 | 4,000 | 5,000 | 9,000 | 14,000 | 5,000 | 5,000 |
| Cash Deposits (SL & Wholesale) | 5,371 | | | | | | 3,000 | | 3,000 | | | | | |
| Misc Other | 15,251 | | | | | | | | | | | | | |
| Transfers to Primary Depository to Fund A/P and Payroll | | (30,000) | | | (20,000) | (10,000) | | (30,000) | | | (20,000) | | | (20,000) |
| **Ending Cash Balance for Store Depository Acct** | 34,337 | 17,337 | 22,337 | 27,337 | 12,337 | 15,337 | 31,337 | 5,337 | 12,337 | 17,337 | 6,337 | 20,337 | 25,337 | 10,337 |
| **Projected Clearings:** | | | | | | | | | | | | | | |
| Payroll –Direct Deposits ACH | | (5,000) | (2,000) | | | | | (61,000) | | (5,000) | (5,000) | (5,000) | (2,000) | |
| Payroll Taxes ACH | | | | | | | | | (28,000) | | | | | |
| Payroll Live Checks | (7,000) | | | | | | | | | | (18,500) | | | |
| Production Suppliers | (12,000) | (12,000) | (12,000) | (12,000) | (12,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| NY Truck Cheese Shipments | | | (5,079) | | (11,000) | | | | | | | | | |
| Bank Loan Payment and any legal fees) | | (3,000) | | | | | | | | (10,200) | | | | |
| Bank Analysis Fee | | | | | | | | | | | | | | |
| Credit Card Fees | | | | | | | | | | | | | (7,000) | |
| US Trustee Qtly Fee | (253) | | | | | | | | | | | | | |
| Health Care Payments | | | (9,766) | | (4,969) | | | | | | (13,000) | | | |
| Insurance Payments (GL and Workers' Comp) | | | | | (16,347) | | | | | | | | | |
| Personal Property Tax Payments, due 8/31/11 | | | | | | | | | | | | | | |
| Total Equipment Lease Payments | | | | | | | | | (923) | | | | | |
| Telecom Charges | | | | | | (474) | | | | | | | | |
| Legal Bills- E. Nyberg | | | | | | | | | | (4,500) | | | | |
| PG&E/Tiger Electric | | | | | | | (3,224) | | | | | (3,224) | | |
| UPS Shipping Charges | | (800) | | | | | (800) | | | | | (800) | | |
| BOE -Sales Tax Payment | | | | | | | | | | | | | | |
| **Landlords:** | | | | | | | | | | | | | | |
| Total Landlord Payments | (41,787) | | (2,120) | | | | | | | (13,592) | | (29,340) | | |
| **Total Disbursements** | (61,040) | (20,800) | (30,965) | (12,000) | (44,316) | (10,474) | (14,024) | (71,000) | (38,923) | (43,292) | (46,500) | (48,364) | (19,000) | (10,000) |
| **Projected Cash On Hand** | 15,817 | 64,517 | 45,552 | 46,052 | 35,736 | 50,262 | 73,738 | 42,738 | 14,315 | (20,977) | (34,305) | (46,669) | (57,669) | (37,669) |

# A.G. FERRARI FOODS
## DAILY CASH PROJECTIONS

| Daily Cash Projections | 26-Aug | 27-Aug | 30-Aug | 31-Aug | 1-Sep | 2-Sep | 5-Sep (Bank Holiday) | 6-Sep | 7-Sep | 8-Sep | 9-Sep | 12-Sep | 13-Sep | 14-Sep |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Primary Depository (Credit Card Deposits from St...** | | | | | | | | | | | | | | |
| Beginning Daily Cash Balance | (37,669) | (73,990) | (69,980) | (42,951) | (185,551) | (135,951) | (178,001) | (178,001) | (166,601) | (136,601) | (145,680) | (145,180) | (159,527) | (107,827) |
| Credit Card Deposits (Stores) | 10,000 | 14,000 | 36,000 | 8,000 | 8,000 | 14,000 | | 16,000 | 45,000 | 8,000 | 10,000 | 12,000 | 40,000 | 10,000 |
| Credit Card Deposits (SL & Wholesale) | | | | | | | | 2,500 | | | 2,500 | | 2,500 | |
| Web Deposits (Amazon) | | | | | | | | | | | | | | |
| Wire Deposits | | | | | | | | | | | | | | |
| Transfers from Store Depository | | | 20,000 | | | 20,000 | | 20,000 | | | 20,000 | | 20,000 | |
| Ending Cash Balance for Primary Depository Acct | (27,669) | (59,980) | (13,980) | (34,951) | (97,951) | (101,951) | (178,001) | (139,501) | (121,601) | (128,601) | (113,180) | (133,180) | (97,027) | (97,827) |
| **Store Depository (Cash Deposits from Stores and ...** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 10,337 | 15,337 | 24,337 | 12,337 | 17,337 | 22,337 | 11,337 | 11,337 | 9,337 | 14,337 | 19,337 | 14,337 | 26,337 | 17,337 |
| Cash Deposits (Stores) | 5,000 | 9,000 | 8,000 | 5,000 | 5,000 | 9,000 | | 15,000 | 5,000 | 5,000 | 12,000 | 12,000 | 8,000 | 8,000 |
| Cash Deposits (SL & Wholesale) | | | | | | | | 3,000 | | | 3,000 | | 3,000 | 4,000 |
| Misc Other | | | | | | | | | | | | | | |
| Transfers to Primary Depository to Fund A/P and Payroll | | | (20,000) | | | (20,000) | | (20,000) | | | (20,000) | | (20,000) | |
| Ending Cash Balance for Store Depository Acct | 15,337 | 24,337 | 12,337 | 17,337 | 22,337 | 11,337 | 11,337 | 9,337 | 14,337 | 19,337 | 14,337 | 26,337 | 17,337 | 21,337 |
| **Projected Charges:** | | | | | | | | | | | | | | |
| Payroll - Direct Deposits ACH | | | | (61,000) | (28,000) | | | | | | | | | (61,000) |
| Payroll - Taxes ACH | | | | | | | | | | | | | | |
| US Trustee Qtly Fee | | | | | | | | | | (5,079) | | | | |
| Payroll - Live Checks | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (5,000) | | (5,000) | (5,000) | (2,000) | | | | (10,000) |
| Production Suppliers | (10,000) | | | | | (10,000) | | (20,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | |
| NY Truck Cheese Shipments | (12,000) | | | | | | | | | | (12,000) | | | |
| Bank Loan Payment (and any legal fees) | | | | | | | | | | | | | | |
| Bank Analysis Fee | | | | | | (9,200) | | (1,300) | | | | | | |
| Credit Card Fees | | | | | | | | | | | | | | |
| Health Care Payments | | | | | | | | | | | | | | |
| Insurance Payments (GL and Workers' Comp) | | | (800) | | | | | (800) | | | | | | |
| Personal Property Tax Payments; due 8/31/11 | | | | | | (11,000) | | | | | | | | |
| Total Equipment Lease Payments | | | | | | | | | | | | | | |
| Telecom Charges | | | | | | | | | | | | | | |
| Legal Bills - E. Nyberg | | | | | | | | | | | | | | |
| PG&E/Tiger Electric | | | | | | | | | | | (10,000) | (16,347) | | |
| UPS Shipping Charges | | | | | | | | | | | | | (800) | |
| BOE--Sales Tax Payment | | | | | | | | | | | | | | |
| **Landlords:** | | | | | | | | | | | | | | |
| Total Landlord Payments | (24,311) | | (18,171) | | | (40,850) | | | | | | | | |
| **Total Disbursements** | (46,311) | (10,000) | (28,971) | (71,000) | (38,000) | (76,050) | | (27,100) | (15,000) | (17,079) | (32,000) | (26,347) | (10,800) | (71,000) |
| **Projected Cash On Hand** | (73,990) | (69,980) | (42,951) | (105,951) | (135,951) | (178,001) | (178,001) | (166,601) | (136,601) | (145,680) | (145,180) | (159,527) | (107,827) | (168,827) |

# A.G. FERRARI FOODS
## DAILY CASH PROJECTIONS

| Daily Cash Projections | 15-Sep | 16-Sep | 19-Sep | 20-Sep | 21-Sep | 22-Sep | 23-Sep | 26-Sep | 27-Sep | 28-Sep | 29-Sep | 30-Sep | 3-Oct | 4-Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Primary Depository (Credit Card Deposits from St...)** | | | | | | | | | | | | | | |
| Beginning Daily Cash Balance | (168,827) | (196,827) | (209,327) | (208,619) | (192,748) | (170,748) | (168,248) | (174,748) | (152,748) | (148,399) | (235,738) | (289,639) | (257,733) | (305,259) |
| Credit Card Deposits (Stores) | 10,000 | 13,000 | 14,000 | 38,000 | 10,000 | 10,000 | 13,000 | 14,000 | 37,000 | 10,000 | 10,000 | 15,000 | 11,000 | 37,000 |
| Credit Card Deposits (SL & Wholesale) | | 2,500 | | 2,500 | | 2,500 | 2,500 | | 2,500 | 3,000 | 4,000 | 2,500 | | 2,500 |
| Web Deposits (Amazon) | | | | | | | | | | | | | | |
| Wire Deposits | | | | | | | | 25,000 | | | | | | |
| Transfers from Store Depository | | | 30,000 | | 20,000 | | | | | | | 30,000 | | |
| Ending Cash Balance for Primary Depository Acct | (158,827) | (181,327) | (165,327) | (168,119) | (162,748) | (158,248) | (152,748) | (135,748) | (113,248) | (135,399) | (221,738) | (242,139) | (246,733) | (265,759) |
| **Store Depository (Cash Deposits from Stores and...)** | | | | | | | | | | | | | | |
| Beginning Cash Balance | 21,337 | 25,337 | 32,337 | 12,337 | 23,337 | 12,337 | 21,337 | 28,337 | 16,337 | 28,337 | 37,337 | 44,337 | 18,337 | 30,337 |
| Cash Deposits (Stores) | 4,000 | 4,000 | 10,000 | 8,000 | 4,000 | 4,000 | 4,000 | 10,000 | 8,000 | 4,000 | 4,000 | 4,000 | 12,000 | 8,000 |
| Cash Deposits (SL & Wholesale) | | 3,000 | | 3,000 | 5,000 | 5,000 | 3,000 | 3,000 | 4,000 | 5,000 | 3,000 | | | 3,000 |
| Misc. Other | | | (30,000) | | (20,000) | | | (25,000) | | | | (30,000) | | |
| Transfers to Primary Depository to Fund A/P and Payroll | | | | | | | | | | | | | | |
| Ending Cash Balance for Store Depository Acct | 25,337 | 32,337 | 12,337 | 23,337 | 12,337 | 21,337 | 28,337 | 16,337 | 28,337 | 37,337 | 44,337 | 18,337 | 30,337 | 41,337 |
| **Projected Clearings:** | | | | | | | | | | | | | | |
| Payroll - Direct Deposits ACH | (28,000) | | | | | | | | | (61,000) | | | | |
| Payroll-Taxes ACH | | | | | | | | | | | (28,000) | | | |
| Payroll-Live Checks | | (5,000) | (5,000) | (5,000) | (2,000) | | | | | | | (5,000) | (5,000) | (5,000) |
| Production Suppliers | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| NY Truck Cheese Shipments | | | | | | | | | | | | | | |
| Bank Loan Payment (and any legal fees) | | | (10,200) | | | | (12,000) | | | | | | | |
| Bank Analysis Fee | | | | (1,829) | | | | | | | | | | |
| Credit Card Fees | | | | | | | | | (25,151) | | | | | |
| US Trustee Qrtly Fee | | | | | | | | | | | | | (9,200) | |
| Health Care Payments | | | | | | | | | | | | | (18,500) | |
| Insurance Payments (GL and Workers Comp) | | | | | | | | | | | | | | |
| Personal Property Tax Payments due 8/31/11 | | | | | | | | | | | | | | |
| Total Equipment Lease Payments | | | | | | | | | | | | | (12,000) | |
| Telecom Charges | | | (4,500) | | | | | | | | | | | |
| Legal Bills- E. Nyberg | | | | (7,000) | | | | | | (29,339) | (29,901) | | (3,826) | |
| PG&E/Tiger Electric | | (13,000) | | | | | | | | | | (594) | | (1,200) |
| UPS Shipping Charges | | | | (800) | | | | | | | | | | |
| BOE-Sales Tax Payment | | | | | | | | (7,000) | | | | | | |
| Landlords: | | | | | | | | | | | | | | |
| Total Landlord Payments | | | (13,592) | | | | | | | | | | | |
| Total Disbursements | (38,000) | (28,000) | (43,292) | (24,629) | (12,000) | (10,000) | (22,000) | (17,000) | (35,151) | (100,339) | (67,901) | (15,594) | (58,526) | (24,455) |
| Projected Cash On Hand | (196,827) | (209,327) | (208,619) | (192,748) | (170,748) | (168,248) | (174,748) | (152,748) | (148,399) | (235,738) | (289,639) | (257,733) | (305,259) | (306,414) |

## A.G. FERRARI FOODS
## DAILY CASH PROJECTIONS

| Daily Cash Projections | 5-Oct | 6-Oct | 7-Oct | 10-Oct | 11-Oct | 12-Oct | 13-Oct | 14-Oct | 17-Oct | 18-Oct | 19-Oct |
|---|---|---|---|---|---|---|---|---|---|---|---|
| **Primary Depository (Credit Card Deposits from St...)** | | | | | | | | | | | |
| Beginning Daily Cash Balance | (306,414) | (307,769) | (263,769) | (278,369) | (279,348) | (226,195) | (283,195) | (308,695) | (306,669) | (278,169) | (234,593) |
| Credit Card Deposits (Stores) | 10,000 | 10,000 | 15,000 | 14,000 | 37,000 | 10,000 | 10,000 | 15,000 | 14,000 | 37,000 | 10,000 |
| Credit Card Deposits (SL & Wholesale) | 2,500 | 4,000 | 2,500 | - | 2,500 | 4,000 | 2,500 | 2,500 | 2,500 | 2,500 | - |
| Web Deposits (Amazon) | | | | | | | | | | | |
| Wire Deposits | | | | | | | | | | | |
| Transfers from Store Depository | 40,000 | 40,000 | - | - | 40,000 | - | - | - | 35,000 | 25,000 | - |
| **Ending Cash Balance for Primary Depository Acct** | (253,914) | (253,769) | (246,269) | (264,369) | (199,848) | (212,195) | (270,695) | (291,195) | (255,169) | (213,669) | (224,593) |
| **Store Depository (Cash Deposits from Stores and /)** | | | | | | | | | | | |
| Beginning Cash Balance | 41,337 | 50,337 | 18,337 | 28,337 | 42,337 | 15,337 | 23,337 | 30,337 | 39,337 | 20,337 | 8,337 |
| Cash Deposits (Stores) | 4,000 | 5,000 | 5,000 | 11,000 | 8,000 | 4,000 | 4,000 | 4,000 | 11,000 | 8,000 | 4,000 |
| Cash Deposits (SL & Wholesale) | 5,000 | 3,000 | 5,000 | 3,000 | 5,000 | 4,000 | 3,000 | 5,000 | 5,000 | 5,000 | 4,000 |
| Misc Other | | | | | | | | | | | |
| Transfers to Primary Depository to Fund A/P and Payroll | | (40,000) | | | (40,000) | | | | (35,000) | (25,000) | |
| **Ending Cash Balance for Store Depository Acct** | 50,337 | 18,337 | 28,337 | 42,337 | 15,337 | 23,337 | 30,337 | 39,337 | 20,337 | 8,337 | 16,337 |
| **Projected Clearing:** | | | | | | | | | | | |
| Payroll -Direct Deposits ACH | (2,000) | | (10,000) | | | | | (5,000) | (5,000) | (5,000) | (2,000) |
| Payroll Taxes ACH | | | | | | (61,000) | | | | | |
| Payroll- Live Checks | | | | | | | (28,000) | | | | |
| Production Suppliers | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) | (10,000) |
| NY Truck Cheese Shipments | | | (12,000) | (5,079) | (16,347) | | | | | | |
| Bank Loan Payment (and any legal fees) | | | | | | | | | | | (10,200) |
| Bank Analysis Fee | | | | | | | | | | | |
| Credit Card Fees | | | | | | | | | | | |
| US Trustee Qtly Fee | | | | | | | | | | | |
| Health Care Payments | | | | | | | | | | | |
| Insurance Payments (GL and Workers' Comp) | | | | | | | | | | | |
| Personal Property Tax Payments: due 8/31/11 | | | | | | | | | | | |
| Total Equipment Lease Payments | | | | | | | | | | | |
| Telecom Charges | (1,856) | | | | | | | | | | |
| Legal Bills- E. Nyberg | | | | | | | | | | | |
| PG&E/Tiger Electric | | | | | | | | | | | |
| UPS Shipping Charges | | | | | | | | | | (924) | |
| BOE- Sales Tax Payment | | | | | | | | | | | (34,000) |
| **Landlords:** | | | | | | | | | | | |
| Total Landlord Payments | | | | | | | | | | (13,000) | (4,500) |
| **Total Disbursements** | (13,856) | (10,000) | (32,000) | (15,079) | (26,347) | (71,000) | (38,000) | (15,000) | (15,000) | (28,924) | (60,700) |
| **Projected Cash On Hand** | (307,769) | (263,769) | (278,369) | (279,348) | (226,195) | (283,195) | (308,695) | (306,669) | (278,169) | (234,593) | (285,293) |

Case: 11-43327    Doc# 148    Filed: 08/10/11    Entered: 08/10/11 17:05:07    Page 17 of 17