ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, BENDES & KUHNER, P.C.**
1970 Broadway, Suite 225
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669

Attorneys for A.G. Ferrari Foods, Debtor

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | Case No. 11-43327 EDJ |
| A.G. FERRARI FOODS, | Chapter 11 |
| Debtor. | **MOTION BY DEBTOR TO SELL SUBSTANTIALLY ALL OF ITS ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND INTERESTS** |

Date: TBD
Time: 2:30 p.m.
Ctrm: 215
U.S. Bankruptcy Court
1300 Clay Street
Oakland, California

A.G. Ferrari Foods, the Debtor and Debtor-in-Possession in the above-referenced case (the "Debtor") hereby submits this motion ("Motion") for an order approving the sale of substantially all of the Debtor's assets free and clear of liens, claims, encumbrances and interests.

## I.       SUMMARY OF RELIEF

The Debtor hereby moves for an order authorizing the Debtor to sell substantially all of its assets to Renovo Capital, LLC and/or its assignee or designee (hereinafter collectively referred to as the "Buyer" and/or "Renovo") for $1,293,268 pursuant to 11 U.S.C. § 363(b) and (f) and on substantially the same terms and conditions set forth in the Asset Purchase Agreement dated as of

_____, 2011 by and between the Buyer and the Debtor (the "APA"), a copy of which is attached as Exhibit A to the Declaration of Patricia T. Saucy filed in support of this Motion.

The Motion by the Debtor to sell substantially all of assets free and clear of liens, claims, encumbrances and interests ("Sale Motion") is being heard pursuant to an order shortening time and is based upon this Motion, the Notice of Motion, the Declarations of Patricia T. Saucy and Mark Barbeau filed herewith, the companion Motion to Assume and Assign Leases and all papers and pleadings on file herein, and such evidence, testimony and arguments as may be presented at the time of the hearing.

## II.     FACTUAL BACKGROUND

On March 28, 2011 (the "Petition Date"), the Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code and is presently operating its business as debtor-in-possession pursuant to the provisions of Sections 1107 and 1108 of the Bankruptcy Code.

The Debtor operates as a specialty Italian food retailer that also sells its foods through its wholesale and internet channels. It began in 1919 with the CEO's grandfather, Annibale Giovanni Ferrari. It has developed over many years and sells fresh and dry Italian products. It direct imports from Italy a substantial amount of the dry goods that it sells in all channels. The Debtor currently operates nine (9) of its own stores in the San Francisco Bay Area. It also operates a Commissary in San Leandro, California where it handles its fresh food production, and catering, as well as housing its warehousing and administrative functions. The Debtor also transacts business through its website. The Debtor currently employs approximately 101 employees.

Both prior to the Petition Date and subsequent thereto, the Debtor has engaged in an extensive search for either capital partners or purchasers for its business. In addition, the Debtor has carefully evaluated its current financial situation, business model, and prospects for future business in both its current configuration and various alternative permeations.

The Debtor has after extensive and prolonged negotiations with the Buyer, has agreed to sell substantially all of its assets to Renovo on substantially the same terms and conditions set forth in the APA. As part of the sales transaction contemplated under the APA, the Debtor will also assume most, if not all, of its real property leases and assign them to the Buyer as well as

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

assuming and assigning certain personal property leases to the Buyer.

Given the Debtor's current financial situation, the estimated liquidation value of its assets if the Debtor were forced to liquidate its assets, the Debtor believes that the sale to the Buyer pursuant to the terms of the APA is in the best interest of the estate and the creditors. Without the sale to the Buyer, the Debtor does not believe it will have sufficient capital to operate and will shut down and be forced to liquidate its assets which will result in a lower return to unsecured creditors.

The Debtor has kept the Creditor's Committee informed of the negotiations with the Buyer and has met with the Buyer and counsel for the Creditor's Committee to discuss the sales transaction. The Debtor has been informed by the Committee that the Committee fully supports the sale of the Debtor's assets to the Buyer on the terms set forth in the APA.

### III.     PROPOSED SALE TO BUYER

#### A.     Summary of Proposed Sale (Assets to be Sold)

The assets to be sold consist of substantially all of the assets of the Debtor. A complete description of the assets being purchased is set forth in Paragraph 1.1 of the APA. The sale does not include a sale of any claims for relief arising under 11 U.S.C. Sections 542, 544, 545, 547, 548, 549, 500, 551, 553(b), or 724(a) of the Bankruptcy code. These claims are often referred to as "avoidance claims."

The sale also includes the sale of an obligation owed to the Debtor by Paul Ferrari in the amount of approximately $42,500 that arises from the restated executive employment agreement between Paul Ferrari and the Debtor.

#### B.     Purchase Price to Be Paid or the Assets

The consideration for assets being purchased is $1,293,268 (the "Purchase Price"). The Purchase Price is composed of three (3) elements: 1) cash paid to the Debtor at closing; 2) credit for the DIP Loan; and 3) assumption of certain liabilities and payment of any cure amounts associated with assumed leases.

It is contemplated by the parties that the cash component of the Purchase Price will be deposited in the Trust Account of the Debtor's attorneys, Kornfield, Nyberg, Bendes & Kuhner,

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

P.C. and from said account, it will be transferred to a DIP Sale Account in the name of the Debtor at closing and the Debtor will then make specified payments from the DIP Sale Account on items identified in the APA and order approving the sale.

### C.     Additional Terms of the Sales Transaction

The sale of the assets to the Buyer shall be free and clear of liens, claims, encumbrances and interests to the full extent permitted by law. The assets will be sold to the Buyer without any representations or warranties of any kind by the Debtor other then that the Debtor will, upon entry of an order approved by the Bankruptcy Court approving the sale, have authority to sell the assets to the Buyer.

The sale is contingent upon Bankruptcy Court approval and also contingent upon the Bankruptcy Court entering an order granting the Debtor's companion motion to assume and assign its executory contracts, both the real property and personal property leases to the Buyer.

The APA also contemplates, but does not require, that the Buyer will enter into consulting agreements with the Debtor's Chief Executive Officer, Paul Ferrari and the Debtor's Chief Financial Officer, Patricia T. Saucy.

There are no broker's fees or commissions to be paid by the Debtor as a result of the sale of its assets to the Buyer and both the Debtor and the Buyer will bear their own expense incurred in connection with the negotiation and execution of the APA, however, Renovo has agreed to pay $35,000 success fee to Bob Sick who is a former employee of the Debtor and who assisted in bringing the parties together.

### D.     Creditor's Committee Approval of the Sale

The Debtor has kept the Creditor's Committee in the case fully apprised of the status of its negotiations with the Buyer. In fact, the counsel for the Creditor's Committee has met with representatives of the Debtor and the Buyer to discuss the sales transaction and the sales transaction has in fact been revised to address concerns that were raised by the Creditor's Committee. The Debtor has been informed by the Creditor's Committee that the Creditor's Committee fully supports the sale of the Debtor's assets to the Buyer on the terms set forth in the APA.

# IV.  LEGAL ARGUMENT

## A.  The Proposed Sale Should Be Approved As Fair, Reasonable and in the Best Interests of the Estate.

Bankruptcy Code § 363(b) and Federal Rule of Bankruptcy Procedure 6004 permit a Debtor to sell assets of the estate outside of its ordinary course of business, after notice and a hearing. See, e.g., *In Re Quintex Entertainment, Inc.*, 950 F. 2nd 1492, 1495 (9th Cir. 1991). In accordance with Federal Rule of Bankruptcy Procedure 6004, sales of property outside the ordinary course of business may be buy private sale or by public auction. See Fed.R. Bankr.P. 6004(f)(1). Due to the extensive pre and post-petition marketing, and due to the requirement by the Buyer that the sale not be subject to overbids, the Debtor is requesting an auction procedure, private or otherwise.

Although § 363(b) does not provide an express standard for determining whether the court should approve a particular proposed sale, courts have examined: (i) whether the proposed transaction has a valid business justification of good business reasoning, (ii) whether the sale is a result of good faith negotiations, and (iii) whether the proposed purchase price is fair and reasonable. See e.g., 240 *North Brand Partners, Ltd. v. Colony G.F.P. Partners, L.P., (In re 240 North Brand Partners, Ltd.)*, 200 B.R. 653, 659 (9th Cir. BAP 1996); *In re Abbots Dairies, Inc.* 788 F2d. 143 (3rd Cir. 1986); *Travelers Insurance Co., v. Plaza Family Partnership (In re Plaza Family Partnership)*, 95 B.R. 166 (Bankr. E.D.Cal.1989). All three of these factors are satisfied in the present case.

### 1.  There is a Valid Business Justification and Good Business Reasoning to Support the Sale.

The Ninth Circuit Bankruptcy Appellate Panel in *Walters v. Sunwest Bank (In Re Walters)*, 83 B.R. 14, 15, 16, (9th Cir. BAP 1988) applied a flexible, case-by-case test to determine whether a sound business purpose justifies a proposed sale under § 363(b). Adopting the reasoning of the Fifth Circuit in *Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In Re Continental Airlines, Inc.)*, 780 F.2d 1223, 1226 (5th Cir. 1986) and the Second Circuit *In Re Lionel Corp.*, 722 F 2d. 1063, 1071 (2nd Cir.1986). The panel noted that whether a proffered

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests

-5-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

1  justification is sufficient will depend upon the specifics of the case. The court should reconsider all

2  salient factors pertaining to the case and enact further the diverse interests of the debtor, and the

3  creditors alike. Id.

### 2. The Facts Pertaining to the Sale Amply Justify and Substantiate the Debtor's Business Judgment and the Proposed Sale Is In the Best Interest of the Estate.

6  As supported by the Declaration of Patricia T. Saucy, the Debtor, both pre and post-

7  petition explored strategic alternatives to save the Debtor and maximize return to creditors. The

8  Debtor extensively explored, finding other equity for either capital partners, purchasers or the

9  ability to restructure its business. The Debtor has concluded that it is not feasible for it to

10  restructure its business and was unable to find capital partners willing to invest into the Debtor in

11  order to enable the Debtor to restructure. The Buyer has presented the Debtor with an offer which

12  should provide a return to the unsecured creditors. The return which the Debtor estimates from the

13  sale is greater than any return which would be achieved through the shutdown of the Debtor's

14  business and liquidation of its remaining assets.

15  The Courts have long recognized that where a sale by a Debtor is made in good faith and

16  upon a reasonable basis-as the proposed sale is here- "[T]he court will not entertain objections to

17  the conduct of the estate]" *In Re Curlew Valley Assocs.*, 14 B.R. 506, 513-514 (Bankr.P. Utah

18  1981). See also *In Re Southern Biotech, Inc.*, 37 B.R. 318, 322-323 (Bankr.P.Fla.1983). This is

19  because it is the "(T)rustee not the court, [that] is selling [the] property.)" *In Re Gulf States Steel*

20  *Inc.*, 285 B.R. 497,516 (Bankr.N.D. Ala 2002). In accordance with *In Re Walters*, Id. and the

21  foregoing cases, the Debtor submits that there is a valid business justification and good business

22  reasoning for the proposed sale to the Buyer on the terms contained in the APA. The Court should

23  approve the sale and allow it to move forward expeditiously.

### B. The Proposed Sale is in Good Faith and Thus the Buyer Should be Afforded the Protection Under 11 U.S.C. § 363(m).

26  Section 363(m) of the Bankruptcy Code provides:

27  ///

28  ///

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

"The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal."

Although the Bankruptcy Code does not define the "good faith," courts have found that the good faith requirement focused principally on the disclosurable material sale terms in absence of a fraud or collusion between bidders. See, e.g. *In re Abbots Dairies,* supra, see also *In Re Apex Oil Co.*, 92 B.R. 847,869-71 (Bankr. E.D. Mo. 1988). It is typically only in "fraud, collusion between the purchaser and other bidders or the Trustee, or any attempt to take grossly unfair advantage of other bidders" that leads to a determination that there is a lack of good faith in a sale proceeding. *In Re M Capital Corp*. 290 B.R. 743,748 n3 (9th Cir. BAP 2003). (Quoting *Community Thrift and Loan v. Suchy (In Re Suchy)*), 786 F 2d. 900, 902 (9th Cir. 1985).

While the Ninth Circuit does not require a finding of good faith be made by the Bankruptcy Court at the time of the sale, it is clear under the circumstances of this case that the Debtor's sale of its assets to the Buyer is proposed in good faith. As is supported by the Declaration of Patricia T. Saucy and the Declaration of Mark Barbeau, the Debtor and Buyer have at all times acted in good faith. The APA was negotiated by the Debtor and Buyer at arm's-length with both parties represented by counsel and with input and participation in the negotiations by the Creditor's Committee. The APA represents the best deal available to the estate at this time. Finally, full disclosure of the terms of the proposed sale have been provided to creditors pursuant to this Motion and the Notice of hearing of sale.

Based on the foregoing, Buyer should be deemed a good faith purchaser within the meaning of § 363(m) of the Bankruptcy Code.

## C.    The Purchase Price is Fair and Reasonable.

An auction sale is generally considered to establish sufficient value for assets being sold. See, e.g. *In re Abbots Dairies,* supra. Debtor admits this process has taken place and that the result of its pre and post-petition efforts to find either capital partners or purchasers demonstrate that the

Motion to Sell All of Its Assets Free and Clear of Liens,
Claims, Encumbrances and Interests

-7-

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

1    proposed sale is for a fair and reasonable price. The Buyer is the only entity that has stepped up

2    with a bona fide offer to purchase the Debtor's assets.

3            Debtor believes that the proposed sale will result in the highest purchase price for the

4    assets being sold. Debtor believes that the liquidation value of its assets are only a fraction of the

5    consideration being paid by the Buyer. Just as the Ninth Circuit acknowledged, the precise value

6    of purchased assets being sold will only be recognized at- and as a result of-the sale of the

7    purchased assets. *Arnold and Baker Farms v. U.S.* 85 F.3rd 1415,1421 (9th Cir. 1996).

8            Finally, courts have recognized that a debtor is entitled to "great judicial deference in

9    deciding which bid to accept as the best and highest bid." *Gulf States Steel*, supra, 285 B.R. 516.

10   Here, to, the Debtor is entitled to deference in determining not only the manner in which the assets

11   are to be sold, but how the value of those assets is to be maximized. Based on the history and

12   circumstances of these cases, the Debtor believes that the Buyer's offer satisfies the requirement

13   that the price paid for the purchased assets to be fair and reasonable. This conclusion is also

14   supported by the fact that the Creditor's Committee in this case fully supports the sales transaction

15   between the Debtor and the Buyer.

16   **D.    The Proposed Sale Satisfies the Requirements of Bankruptcy Code § 363(f)
        For The Sale of The Estate's Assets Free and Clear of Encumbrances.**

17

18           In the present case, the Debtor's assets are subject to a blanket security interest in favor of

19   Bridge Bank ("Bridge"). As of the time of the anticipated sale, Bridge will be owed approximately

20   $100,000. The purchase price to be paid for the assets is far greater than the outstanding balance

21   owed to Bridge Bank and therefore under 11 U.S.C. § 363(f)(3), the lien can be sold free and

22   clear. As a practical matter, the Debtor and Buyer intend to pay the entire outstanding obligation

23   owed to Bridge at the time of closing and will obtain a lien release from Bridge.

24   **E.    Accurate and Reasonable Notice Has Been Provided**

25           The sale notice sets forth a summary of the proposed terms of the APA and directs

26   individuals to Debtor's counsel for additional information. In addition, this Court entered an order

27   shortening time to hear this Motion.  The Debtor has complied with the Court's schedule.

28   Accordingly, the Debtor has satisfied the requirements for accurate and reasonable notice.

Motion to Sell All of Its Assets Free and Clear of Liens,                    -8-
Claims, Encumbrances and Interests

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669

**F.     Waiver of Federal Rule of Bankruptcy Procedure 6004(g) Is Appropriate in this Case.**

As a final matter, the Debtor request that the stay imposed by F.R.B.P. 6004(g) upon orders authorizing the use and sale for release of property be waived under the circumstances of this sale. It is in the interests of the Debtor's creditors and the estate that the sale closes as soon as possible in light of the Debtor's cash flow situation. The Debtor has served the sale notice on all of the creditors, interest holders and other parties in interest, and therefore, any persons having any objections to the Motion have been afforded a reasonable opportunity to voice any objections or concerns.

Debtor is requesting that the provisions of F.R.B.P.6004(g) which would otherwise stay any order approving the sale as requested therein be waived to allow the sale to close as quickly as possible after the entry of the sale order.

Accordingly, the Debtor is aware of no prejudice that will be caused by the Court's waiver of F.R.B.P. 6004(g).

## V.     <u>CONCLUSION</u>

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order as follows:

1.     Approving the Motion and authorizing the Debtor to consummate and carry out the transactions described in the APA, to complete the sale of substantially all of its assets as set forth in the Motion and APA, and approve the terms and conditions of the APA;

2.     Under 11 U.S.C. § 363(f) and without further order of the Court, approving the sale of the purchased assets to Buyer free and clear of all liens, and any such encumbrances securing claims not paid prior to or concurrently with the closing attaching to the portion of the Debtor's proceeds to the same extent and priority as the Petition Date;

3.     Determining that the Buyer is a good faith purchaser of the Debtor's assets such that 11 U.S.C. § 363(m) will be applicable in the event of a closing pursuant to an unstayed order;

4.     Finding that the terms of the sale are fair and reasonable and the Buyer is paying reasonably equivalent value for the purchased assets;

///

5.     Waiving the provisions of F.R.B.P. 6004(g) under the circumstances of this case; and

6.     For such other and further relief that the Court deems just and appropriate.

Dated: August 19, 2011                    Kornfield, Nyberg, Bendes & Kuhner, P.C.

By: /s/ Eric A. Nyberg
     (Bar No. 131105)
     Attorneys for Debtor A.G. Ferrari Foods

Kornfield, Nyberg, Bendes & Kuhner, P.C.
1970 Broadway, Suite 225
Oakland, California 94612
(510) 763-1000
FAX: (510) 273-8669